NORTH & COMPANY vs. MENDEL & BROTHER.

1. The evidence being conflicting, there was no abuse of discretion in refusing a new trial on the ground that the verdict was contrary to law and evidence.

2. The statute of frauds does not require that all the terms of the contract should be agreed to or written down at one and the same time, nor on one piece of paper; but where the memorandum of the bargain is found on separate pieces of paper, and where these papers contain the whole bargain, they form together such a memorandum as will satisfy the statute, provided the contents of the signed paper make such reference to the other written paper or papers as to enable the court to construe the whole of them together as containing all the terms of the bargain. If, however, it be necessary to adduce parol evidence, in order to connect a signed paper with others unsigned, by reason of the absence of any internal evidence in the signed paper to show a reference to or connection with the unsigned papers, then the several papers taken together do not constitute a memorandum in writing of the bargain, so as to satisfy the statute.

(a.) Certain parties made a bargain of purchase with a person in

Savannah, Ga., claimed by them to be the agent of the vendors, and claimed by the vendors to be a broker. This person sent the following telegram to the vendors: "Mendel five bellies, eight. Ehrlich offers seven-eights ten bellies lighter than last." On the same day he made the following entry in his entry book: "Sold account C. H. North & Co., Mendel, 5 bellies 8:"

*Held,* that this was not a sufficient memorandum in writing to comply with the requirements of the statute of frauds, so as to bind Mendel & Brother as purchasers. It fails to set out the purchasers or the quantity and price of the article sold, and parol evidence was not admissible to supply these defects.

(*c.*) To the exceptions made by the Code to the statute of frauds and perjuries (29 Ch. II.) other will not be added by construction.

December 19, 1884.

Statute of Frauds. Evidence. Contracts. Before Judge HARDEN. City Court of Savannah. May Term, 1884.

Reported in the decision.

LAWTON & CUNNINGHAM, for plaintiffs in error.

RICHARDS & HEYWARD, for defendants.

HALL, Justice.

The plaintiffs brought suits against M. Mendel & Brother, a firm composed of Meyer Mendel and Joseph Mendel, upon an account for five boxes pork bellies, 124 pieces, 2,817 pounds, at 8 cents, $225.36, sent from Boston on the 17th of January, 1884, to Savannah, per steamship City of Columbus. The goods were sent upon the order of George C. Freeman, who was alleged by the plaintiffs to be a broker, but who was regarded by the defendants as the plaintiffs' agent, and dealt with by them, according to their evidence, in the latter character. This shipment was made upon a telegram, sent from Savannah to Boston, on the 16th day of January, 1884, by George C. Freeman to plaintiffs, which was as follows :

"Mendel five bellies, eight. Ehrlich offers seven-eights ten bellies lighter than last."

v 73-27

In Freeman's entry book, under this date, the following appears, as was proved, in his own handwriting:

"Sold account C. H. North & Co., Mendel, 5 bellies, 8."

This telegram, together with the entry, was the only note or memorandum in writing of the contract sued on. The steamship, shortly after sailing, was wrecked, and her cargo was lost. The goods never reached the defendants. Under the evidence in the case, the jury found for the defendants, and a motion made for a new trial was overruled. On the judgment overruling this motion, error is assigned.

The defence set up was that the suit was upon a contract for the sale of goods amounting to fifty dollars and more; that the defendants never accepted and received any part of the same; gave nothing in earnest or part payment to bind the bargain; and that the promise was not in writing and signed by them, nor by any person authorized by them to do so. Code, §1950, sub-sec. 7. It is conceded that if Freeman did not act as a broker in the transaction, and if the word "Mendel" in his entry book is not the signature of defendants, which he was authorized to make, and if the delivery of the goods on board the vessel consigned to them, was not an acceptance and delivery of the same to them, then they are not liable under this section of the Code, and their defence must prevail. The verdict seems, for these reasons, to have been sustained by the lower court, the evidence on both points being conflicting.

The testimony of the defendants, which the jury had a right to credit, showed that they did not then, and had never dealt with Freeman as a broker, but had always dealt with him as the agent of the plaintiffs, and had never iven him authority to sign their names to that or any other promise in writing; that Freeman came to them on the occasion in question, as he had usually done on former occasions, soliciting orders for the plaintiffs, as whose agent they regarded and treated with him. On the other point,

they showed that they dealt with the plaintiffs for cash, and, according to their usual course of dealing, goods ordered were never considered as belonging to them until delivered at their place of business and paid for.

The plaintiffs' evidence tended, rather inferentially than directly, to rebut both these positions, so that, if there were nothing else in the case, we could not say that there was not evidence to sustain the verdict, and that the judge did not exercise a sound discretion in refusing to set it aside and to grant a new trial.

Admitting that the last of these points is with the defendants, then the plaintiffs insist that Freeman was a broker; that he ordinarily acted in that, and in no other, character; and that defendants knew this, and must have dealt with him in that capacity, and have given him authority to bind them by signing their names to a promise in writing, which he did by this entry in his book; that while it is true their names were not subscribed by Freeman to the entry, still, if it appeared anywhere in the same, that was sufficient to bind them. Much extraneous evidence was offered and received, over the objection of defendants, to explain and render intelligible both this cabalistic entry and telegram. To the introduction of this the defendants objected, and their objection being overruled, they filed exceptions to the decision, and have brought it here for review.

We are of opinion that this memorandum, taken either by itself or in connection with the telegram, does not satisfy the requirements of the statute; without such evidence, it would be impossible to connect these papers as forming parts of the memorandum of the agreement relied on. The statute does not require that all the terms of the contract should be agreed to or written down at one and the same time, nor on one piece of paper; but where the memorandum of the bargain is found on separate pieces of paper, and where these papers contain the whole bargain, they form together such a memorandum as

will satisfy the statute, provided the contents of the signed paper make such reference to the other written paper or papers as to enable the court to construe the whole of them together as containing all ·the terms of the bargain. If, however, it be necessary to adduce parol evidence, in ·order to connect a signed paper with others unsigned, by ·reason of the absence of any internal evidence in the signed ·paper to show a reference to, or connection with, the un-·signed papers, then the several papers taken together do ·not constitute a memorandum in writing of the bargain, so ·as to satisfy the statute. 1 Benjamin on Sales, §220 and ·note 24. *Smith vs. Jones*, 66 *Ga.*, 338, is upon this question, directly in point. But supposing the entry and telegram to be united by the internal evidence furnished by themselves, then they would not satisfy the statute, because they fail to show what property was contracted for, what price was agreed upon, and the parties to whom it was sold. "Sold account of C. H. North & Co., Mendel, 5 bellies ·8," as expressed in the entry, or as expressed in the tele-·gram, " Mendel, five bellies, eight; Ehrlich offers seven-·eights, ten bellies lighter than last," contain matter not ·only ambiguous, but unintelligible to any one but Freeman and the plaintiffs, without explanation, or rather ·translation, by a resort to parol evidence, and this was the very thing the statute was enacted to prevent, in order to take away all temptation to commit either fraud or per-·jury. 1 Benj., §210, and citations in note (*l*) and 7 there; *Id.*, §§233, 236, 247, 249–252, inclusive. By reason of these deficiencies, this alleged contract was imperfect, and could ·only be made perfect by a resort to parol testimony, which was incompetent for such a purpose. *Smith vs. Jones, ut supra.* " Mendel," of itself and unaided by other evidence, ·could not be taken as the firm name of the defendants, while "5 bellies, 8 " is, to the last degree, enigmatical, if not wholly unintelligible. Waiving any question as to the commodity sold, both the quantity and the price are wholly. indefinite; in these respects there is no ambiguity, either

latent or patent, which, in any case, could be explained by a resort to parol evidence, but the uncertainty is great and manifest, and it has not been shown that the terms employed here are in accordance with any mercantile usage or custom in reference to which the contract was made. The contract is therefore faulty in failing to set out the purchaser, the quantity and price of the article sold; these are all essential ingredients, and should have appeared, as we have seen, in the memorandum of the bargain.

It was remarked shortly after the passage of the act of 29 Ch., II, for the prevention of frauds and perjuries, from which our law is taken, with the modifications since made therein by the interpretation of the courts and judges, by a venerable and distinguished judge, that every line of that celebrated statute was worth a subsidy to the people of England, and many learned and able administrators of the law have expressed regret that the force and efficiency of this act have been impaired by the least departure from its plain provisions, and by construing it so as to introduce exceptions not authorized by its letter. Some of these exceptions are embodied in our Code, and, so far as they are there recognized, we have no power to reject them; but we will not add others by construction, to avoid what may appear to be either harsh or inconvenient. We repeat, with all the emphasis that the unanimous judgment of this bench can give to it, what was said by the present chief justice in pronouncing the judgment of the court in *Smith vs. Jones, supra,* that "the rule should not be relaxed now, when the flood-gates are open wide as to the competency of witnesses, and the only break-water left is to put this class of contracts, and others of similar character, in writing." The case in hand falls under no exception recognized by our law, and the testimony objected to on the trial by the defendants should have been repelled. Without it there was nothing to rest a verdict on in favor of the plaintiffs. Whether the result of the trial was at-

tained by proper methods, it is sufficient that the verdict is necessarily correct, and the court was right in allowing it to stand.

Judgment affirmed.