PRATER *et al. vs.* SEARS, administrator.

1. Where a son, in 1866, accepted from his father and mother a conveyance purporting to be a voluntary gift of property, on the expressed consideration of love and affection, and held it until 1884, without any effort to correct any mistake in such expressed consideration, and his parents having died in 1877, and the paper having been held to be testamentary in character, he filed a bill in 1884, alleging that the real consideration was that complainant should sell out his property in Texas, where he was living, remove to Georgia, and take care of his father and mother during their lives, and give them a decent Christian burial at their respective deaths, which he did, and that in consideration of love and affection, he had conveyed the land to his wife, who joined him in the bill, equity will not grant relief by correcting the original conveyance after such a lapse of time, nor by decreeing a specific performance.

(*a.*) If the deed was a mere voluntary conveyance, a mistake in it will not be corrected against heirs of the grantor, nor will a specific performance of it, when corrected, be decreed.

2. In order to recover damages in lieu of a specific performance, when the latter cannot be had because the party has put it beyond his power by his conduct, it is essential that a case for specific performance should be made out, so as to give equity jurisdiction of the subject-matter; otherwise the courts of law will have jurisdic-

tion and can relieve; and if the account which made the consideration of a promised deed be out of date, equity will not seize jurisdiction to put it within date. If equity had jurisdiction for the purpose of correcting a mistake in the contract and compelling a specific performance, it would decree damages in lieu of property which could not be returned in kind.

(*a.*) In this case, it appears that the complainant did not perform his part of the contract sought to be enforced, but that he kept accounts against his parents, swore to them, and presented them to his father's administrator.

(*b.*) In order to have a specific performance, the complainant must make a clear case, and the contract he sets up must be specific. Where the allegations of the bill were uncertain, confused and contradictory, the bill was demurrable.

(*c.*) This case differs from those in 23 *Ga.*, 431; 28 *Id.*, 61.

3. The statute requires that an affidavit *in forma pauperis*, made for the purpose of carrying the case to the Supreme Court, shall state in the alternative the inability of the excepting party to give bond or pay costs. This requirement is not met by an affidavit stating conjunctively the inability of the plaintiff in error to pay the costs and give the bond for the eventual condemnation money, as required by law; and such an affidavit does not relieve counsel for the plaintiff in error from responsibility for the costs in this court. (Rep.)

April 20, 1886.

Mistake. Specific Performance. Equity. Volunteers. Damages. *Laches.* Statute of Limitations. Before Judge Estes. Hall Superior Court. August Term, 1885.

Reported in the decision.

W. F. Findley; Dunlap & Thompson, for plaintiffs in error.

M. L. Smith; H. H. Perry, for defendant.

Jackson, Chief Justice.

This bill was brought by Prater and wife against Sears, administrator of Prater's father, to recover the money paid for a parcel of land sold by the administrator and in his hands; and inasmuch as complainant, Prater, had con-

veyed to his wife the land which was sold by the administrator and brought the money, the bill prays that she be subrogated to his rights, and recover said money in lieu of the land.

The bill alleges that complainants were living in Texas and were induced to move back to Georgia, selling out their property there, to take care of the father and mother in their advanced age, on the promise and contract of the father in consideration thereof, to-wit, of the trouble and expense incurred in the support of the old people, to give complainant, Joseph Prater, all the goods and chattels, lands and tenements of Joseph Prater, Sr.; that pursuant to this inducement, they moved to Georgia in 1866 to take care of the old people, and on the 1st of December, 1866, Joseph Prater, Sr., and his wife did make to Joseph Prater, Jr., in consideration of natural love and affection, a deed or writing to the same; that the real consideration for said paper was, that Joseph, Jr., was to support, maintain and care for Joseph Prater, Sr., and wife for and during their natural lives, and give them a decent Christian burial at their death; that Joseph, Jr., accepted the same, believing that it conveyed to him the absolute estate at the time of its delivery in the property, that so believing, they moved into the house with the old people, and went into immediate possession of the property and remained in possession, managing it as the property of Joseph, Jr., all the while till the death of Joseph, Sr., which occurred in 1877, and continued so to manage the same till the death of his mother later in the same year; that from 1866 till 1877, the complainants had undisputed possession and absolute control of all the property, which was recognized by the old people as the property of Joseph, Jr., and that they had given it to him to support, maintain and care for them the remainder of their lives, which they said he was doing to their entire satisfaction and comfort; that over and above all the rents, issues and profits of the property purported to be conveyed to Joseph, Jr., he expended the

sum of $981.82, besides his labor and care of his parents during their last illness, worth $200, and $55.97 for their burial, which appears in a bill of particulars exhibited to the bill, and sworn to before the ordinary in 1877; that Joseph, Jr., after their death, returned to Texas on several years' business, and for love and affection to his wife, conveyed to her this land in November, 1877, before leaving, the consideration named in the deed being nominally $500.00, but it was really only for love and affection; that she remained in possession until turned out by an action of ejectment brought by the administrator of William Prater, one of the heirs of Joseph Prater, Sr., the court deciding that the conveyance from Joseph, Sr., to Joseph, Jr., was testamentary, and that the title was in the estate of Joseph, Sr.; that the administrator of Joseph, Sr., immediately took possession and sold it as the property of that estate and holds the proceeds; and that Joseph, Jr., specifically performed his contract and supported the old people, etc.; and though he supposed his account, marked exhibit B, barred by the statute of limitations, he presented it for payment, and the administrator refused to pay it.

Therefore they ask that, as the land is now sold to an innocent *bona fide* purchaser, and there can be no specific performance of the contract made by the administrator's intestate, the administrator be decreed to pay Mrs. Prater the money.

An amendment was made to this bill, it appears, but this record does not show what it is. It strikes out words in certain lines on certain pages and inserts others, but as there are no numbered pages or lines in the record of this bill here, we cannot make it out and consider it. From the argument we gather that it changes the contract set out in the original as conveying an absolute estate in 1866 to Joseph, Jr., into an estate for remainder after the death of the old people—the effect of which would be to alter the right of possession, which is also repeatedly alleged to be in Joseph, Jr., and his wife, on his return to

Texas, and make the whole affair confused and contradic-
tory.

1. We are unable to see the equity in the bill. The
contract set up was made in 1866, and it is for the consid-
eration of selling out in Texas and coming back to Georgia
and supporting and caring for the old people; that the
old man agrees to give his son all he has at once and puts
him in possession of all, and gives him a conveyance for
love and affection as the only consideration, which the
young man receives and accepts as the obligation of the
father; yet he accepts it and makes no effort, from 1866
to the date of this bill in 1884, to have the mistake cor-
rected in respect to the consideration or the time when the
estate was to vest in him. We think to sue now, after 18
years have elapsed, is to ask what equity never grants—
relief upon a demand so stale. Our own Code, in sections
2924, 3094 and 3125, together with numerous decisions of
our courts, settles this principle. On the face of the ac-
cepted conveyance, it is a mere voluntary deed; on the
contract sought to be set up, it is a binding deed for value.
The other side to it is dead. If a mere voluntary convey-
ance, a mistake in it will not be corrected against heirs,
which is the case here, nor will a specific performance of
it, when corrected, be decreed. *Powell vs. Powell,* 27 *Ga.,*
p. 36.

Therefore the case turns on the rectification of the writ-
ing and the necessity is upon complainant to have it cor-
rected. Shall it be done when 18 years have elapsed and
the other side to the deed is dead?

Nor does it matter at what time the estate is to pass—
the title to be put in the grantee—whether at once, when
it is delivered in 1866, or at the death of Joseph Prater,
Sr., in 1877. The contract was made in 1866, the convey-
ance was then made, the writing then delivered and ac-
cepted, the consideration in it of love and affection only
then put in the deed by mistake, and the real considera-
tion of support and care of the old people then left out,

and whatever other mistake was made in that instrument was then made. There is no pretense that any writing was made or was to be made at any other time, but then on the return of complainants from Texas to take charge of the parents, or that any parol contract was made at any other time.

So that Joseph Prater, Jr., slept quietly over this mistake 18 years, and until his father was asleep in death, no matter whether the contract was immediate title to be put in him as stated in the original in 1866, or a remainder at the death of his father. The *laches* is as great, the sleep as long, in either case; and the turning of the consideration from love and affection into a valuable consideration was equally as important for equitable relief in reaping the fruit of the contract, no matter what the nature or extent of title was to be.

2. To have damages, as ruled in *Robson, adm'r, vs. Harwell and Wife*, 6 *Ga.*, p. 589, in lieu of specific performance when that cannot be done because the party has put it beyond his power by his conduct, it is essential that a case for specific performance be made out in order that equity may get jurisdiction of the subject-matter. Otherwise the courts of law will have the jurisdiction and can relieve. And if the account be out of date, that which made the consideration of the promised deed, as in this case, equity will not seize jurisdiction to put it in date, for equity follows the law. It is only on the idea of correcting a mistake in the contract and constraining a specific performance of it—which common law courts cannot do—that equity gets jurisdiction, and when she has it then she will decree damages in lieu of property which cannot be returned in kind.

In this case, even if not barred by lapse of time and negligence to move until the other party had its mouth sealed by the death of the makers of the paper sought to be altered and corrected on account of mistake, there is

v-77-3

no equity in the bill, because there is no ground for equity jurisdiction on account of mistake or specific performance for many reasons. It is enough to say that the complainant must perform his part in reference to the contract which he seeks to have performed by the other. He must specifically do, or have done specifically, what he agreed to do, before he can demand that the other party do the same thing. Here, instead of supporting and caring for the old people, the account exhibited to his bill shows that he charged for all he did; that he swore to his charges and demanded payment of the administrator appointed by the ordinary after making out and swearing to the account before the ordinary. According to the bill, its statements and its prayer, his father had paid him by the conveyance he made him, and owed him nothing. There was a mistake in the conveyance which he wished corrected, 'tis true, but that instrument, when corrected, paid him; and he excuses himself for *laches* because he did not know the mistake until the court's decision showed it to him. Why, then, charge for all the hauling he did for the parents, for sugar, spirits of turpentine, every item that can well be imagined? Why keep this account every year from 1866 up to 1877, when his parents died? Did he furnish them things in performance of his part of the contract, or did he keep the account to recover it from the estate? His own conduct answers, his oath before the ordinary, his demand on the administrator, all done before this bill was filed, some seven years before—answer that he kept the account to make the estate pay it, and did not do what he promised to do in reference to the contract—his part of it. What specific performance has he done in order to exact it from another? He lived with his parents; he used their land and home; he spent all the proceeds for them in common with his family and himself, and charges them over a thousand dollars besides for the things he agreed to do for the property, the personalty of which he got, and the realty of which he wants equity to give him. *Beall et al., ex'rs, vs. Clark et al.*, 71 *Ga.*, 818; Code, §3187.

Again, if the equitable bar were not in his way, raised by his *laches*, before equity will help the mistake and decree specific performance, he must make a clear case; the contract he sets up must be specific; what sort of specifications does he make here? At one moment, he has title and absolute possession by virtue of it for eleven years; at another, he was to have title at his father's death. At one moment, he was to have an estate in remainder; anon, a fee at once. In one breath his accepted deed granted by his father is made because his father loved him; in another he has paid his father for that deed eleven years of constant support and comfort by his labor and attention, and cared for him and his mother in their last sickness and paid their funeral expenses, all of which were the consideration of the contract. One day the contract is a gift, then it is a regular business *quid pro quo* bargain. Equity will not enforce or aid any such uncertain allegations. Code, §3187, and *Beall vs. Clark, supra.*

And so we might adduce other grounds on which the judgment below, dismissing the bill on demurrer, could be upheld, such as *res adjudicata*, the statute of limitations, in addition to the equitable bar of *laches* and unreasonable sleep; the fact that the wife is a volunteer pure and simple, and she is to receive the value of the land against heirs; the fact that the filing of the account and swearing to it and demand of payment caused the appointment of the administrator, the sale of the land, for there were no other debts of the father, and the putting title in an innocent purchaser; and [the complainant] thereby defeats any specific-performance by his own violation of the contract to charge nothing for everything his debt covered, but one is as good as a hundred grounds, and equally with a multitude demands an affirmance of the judgment.

Anybody can see the obvious distinction between this case and that of *Maddox et al. vs. Rowe,* 23 *Ga.,* 431, and 28th *Id.,* 61.

Judgment affirmed.