## DOUGLASS *v.* BUNN.

A written agreement by which a promisor binds himself to convey to the promisee "four lots of timber, more or less," for a named consideration thereafter to be paid, is not, for want of description, such a written contract in relation to the sale of land as satisfies the statute of frauds. While parol evidence may be admitted to explain ambiguities in the description, it can not be admitted to supply a description which is entirely wanting in the writing. Accordingly, where the promisee under such an instrument, entered upon certain lands for the purpose of cutting and removing timber thereon, it was error to refuse to enjoin him from so doing, when he relied only on the terms of such written contract for his right to do so.

Submitted February 19, — Decided March 2, 1900.

Petition for injunction. Before Judge Bennet. Ware county. January 20, 1900.

*S. T. Kingsbery & Son* and *Denmark & Ashley,* for plaintiffs. *Toomer & Reynolds, L. A. Wilson,* and *S. W. Hitch,* for defendants.

LITTLE, J. Douglass exhibited his petition to the judge of the superior court of Ware county, in which he alleged that he resided in Appling county; that he owned 200 acres of lot of land number 456 in the 5th district of Appling county, describing it; that the defendants in error recently entered upon said land and with their servants and employees began cutting and felling the pine timber on the land, with the intention of removing the same and converting it to their own use, and are now so engaged; that they have no title to said land, nor to the timber thereon; that he has been greatly damaged by reason of said cutting; and he prays that the defendants be restrained from entering or cutting the timber on the land, and be permanently enjoined from removing the same. Attached to the petition was

an abstract showing title in petitioner. In answer to the petition, the defendants admitted title of petitioner to the soil of the land described, but claimed that defendants had title to the timber on said land and to certain sawmill privileges and easements therein. It was admitted that the defendants had entered on the land and had cut certain of the timber thereon, and that they intended to remove the same and convert it into lumber for their own use. The defendants averred that on the 5th of September, 1899, they purchased from the petitioner all of the timber on lots of land numbers 410, 411, 419, and 200 acres of lot 456, being the timber on 1570 acres of land; that at the time of the purchase of this timber defendants paid to the petitioner ten dollars in cash, in confirmation of the sale of said timber, and petitioner bound himself to execute leases to the defendants, who agreed to pay him the sum of two dollars and fifty cents per acre therefor; that the said contract was in writing, and covered the lots and parts of lots of land described in the answer. They attached to the answer a copy of the contract, and averred that though it is silent as to the length of time the leases should run, it was agreed between them that such leases should expire in twelve months from their date, and should include the usual and necessary tramroad privileges, and cover the premises described in the answer; that they always have been willing and ready to comply with the terms of the contract, and have demanded of the petitioner the formal leases in accordance therewith; that the petitioner has failed and refused to execute such leases in conformity with the contract; and that by reason thereof they have an equitable title to the timber on said land, and petitioner holds legal title to the same as trustee for them. They then pray for cross-relief against the petitioner, and for an injunction restraining him from cutting and destroying such timber on said land as the defendants have already cut under their contract. They also pray for a specific performance of said contract, and that petitioner be required to execute leases to them for the timber on said land, upon the payment by defendants of the price stipulated in said contract. The contract referred to is as follows:

"Sessoms, Ga., September 5th, 1896. Received of J. R. &

T. Bunn ten ($10.00) dollars, as a confirmation of the trade, and in part payment on four lots of timber, more or less, sold to them by me on this the 5th day of September, 1899. Leases on same to be made out and turned over to said J. R. and T. Bunn as soon as possible; terms are to be cash on delivery of said leases. Price of said timber is agreed at $2.50 per acre.

　　　　　　　　　　　　　　　　Q. Douglass."

Evidently the first-named date is a clerical error, and the figures 1896 should be 1899. The plaintiff demurred to so much of the answer as in the nature of a cross-bill sought affirmative relief by way of specific performance of the alleged contract, on the ground that the contract is not binding on the promisor, because it relates to real property, and that no such writing in relation thereto was signed as is required by the statute of frauds. No reference to the evidence in detail is deemed necessary. There was no question as to the execution and delivery of the receipt, which is the only written evidence of the contract, nor as to the payment of the sum recited therein. Much evidence was admitted tending to show, on the part of the plaintiff, a failure of the defendants to pay the money and receive the leases; and, on the part of the defendants, that the plaintiff refused to accept the price agreed on and execute the leases, as well as to other points, among them that the plaintiff has solemnly admitted, in judicio, the sale of the timber as claimed by defendants. It is recited in the bill of exceptions that the evidence of the defendants, as well as the rebuttal evidence, was admitted subject to the right reserved by the plaintiff unto himself to claim and insist, in the argument of the case, that the contract was not binding on the promisor under the statute of frauds; that, as the contract contained no description of the real property, parol evidence can not be resorted to to describe the land, and that if the contract of sale of the timber is to be treated as a contract in parol, such contract is not admitted in all of its legal essentials. At the hearing the judge refused the injunction, and by his order expressly permitted the defendants to cut and use the timber upon the land claimed by them to have been referred to in the written contract, upon their first giving a bond in the sum of five thousand dollars, conditioned to

pay the plaintiff any sum which may be recovered on the final trial of the case. It is claimed by the defendants in their answer, that, under the contract set out, they have a perfect equitable title to the timber, and the right to cut and remove the same. We are, therefore, to consider the legal effect of the writing under which this claim is made. By its terms, Douglass, the petitioner, did agree to sell to the defendants "four lots of timber, more or less," for the named price of $2.50 per acre, and did agree that as soon as possible after the 5th day of September, 1899, he would execute and turn over to the defendants "leases on the same," and that they, defendants, were to pay him the purchase-price on the delivery of said leases.

Trees growing upon land constitute part of the realty, and a sale of them must, under the statute of frauds, in order to be binding, be in writing. *Coody* v. *Gress Lumber Company,* 82 *Ga.* 793. Section 2693 of the Civil Code declares that, to make a contract for the sale of lands or any interest in or concerning them binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or by some authorized person. If we discard all extrinsic evidence and look alone to the words of the writing, we find what appears to be an agreement on the part of the petitioner, for a specific price, to sell certain wholly undefined lots of timber, or rather to execute leases for a time not stated, permitting the lessee to have the growing timber on lots of land not in any way designated or described. We can not tell from this writing in what county or district the lands are situated, nor indeed in what State they lie. In other words, the agreement is that for a specified price the petitioner will sell to the defendants four lots of timber — nothing more, nothing less; and while it is agreed that leases on the same shall be made out and delivered to the defendants, neither the term nor the beginning of the term of such leases is expressed. In his work on the Statute of Frauds, § 385, Mr. Brown declares that it must appear from the memorandum what is the subject-matter of the defendant's engagement, and also that "property which is purported to be bargained for must be so described that it may be identified"; citing as authority a very large number of English and American cases.

Wood, in his Treatise on the Statute of Frauds, § 353, in treating the question as to what description of the bargained property is sufficient in a written memorandum, under the statute of frauds, declares: "It is not necessary that the agreement should contain a very precise description of the property to be sold, as parol evidence is admissible to identify it, where the memorandum or note contains sufficient data to apply the description to the subject-matter by the aid of such evidence, without requiring any aid from such evidence as to the intention of the person sought to be charged, where he owns other property to which the writing might apply." Without a description of the property purchased, it is evident that the writing can not contain a valid agreement of sale, and the rule is that such description must at least be sufficient to identify the property. In *Smith* v. *Jones,* 66 *Ga.* 338, an instrument was held insufficient to satisfy the requirements of the statute, because it did not describe the thing bought, nor the price, nor any of the terms of the contract. In *North* v. *Mendel,* 73 *Ga.* 404, a paper was held not to take the contract out of the operation of the statute, because it failed to show "what property was contracted for, what price was agreed upon, and the parties to whom it was sold." The rule is stated in *Lester* v. *Heidt,* 86 *Ga.* 228, to be: "The writing, in order to be sufficient to satisfy the statute, must be coextensive with the stipulations; it must cover the entire contract."

It is not necessary, however, to multiply authorities on this point. In order to constitute a valid sale and purchase, there must, of course, be a subject-matter as well as a price. To satisfy the statute this subject-matter must be described in the writing. It need not be so described as to be capable of identification by mere reference to the writing, provided the description given makes reference to other conditions capable of explanation; in the latter case there is no want of identity, but the language making the identification may be explained by parol evidence, if it is ambiguous. There is, however, a marked distinction between explaining an ambiguous description by parol evidence, and admitting parol evidence to supply a description. In the one case, the property *is* described in the writing, but

not in such a manner as renders the description intelligible to those not informed as to the terms used in such description; parol evidence then explains, not what was the subject of the contract, but the meaning of the terms used in describing it. In the other, the subject-matter not being described at all in the writing, its identification must necessarily rest in parol. In the case of *Jennings* v. *National Bank of Athens,* 74 *Ga.* 782, this court held that where in a deed the description of the land conveyed referred to well-known streams passing through certain counties, and to other public establishments situated therein, the land was not so vaguely described as to render the deed void, that such description was slightly ambiguous, and in such cases it is admissible to resort to parol evidence to explain the ambiguity. In the decision in that case Justice Hall said that "had there been no mention of any county or district and number, or no boundaries or monuments, either natural or artificial, in them, then they would have been utterly. wanting in anything to enable court or jury to locate them or to identify the land sought to be conveyed." As to the doctrine of explaining ambiguities in such contracts by parol evidence, see *Mohr* v. *Dillon,* 80 *Ga.* 572. There is no ambiguity in the description of the subject-matter of the sale in the writing before us. It is simply not described. Under the contract as evidenced by the writing, the promisor is obligated to convey no particular lots of timber; *any* four lots would meet the description; *what* four lots were contracted for is purely conjectural. Clearly, such a description will not satisfy the requirements of the statute, and the position of the defendants, that under this contract they took title to the timber on certain specific lots of land in a named district and in a given county, to be good, must have the aid of parol evidence to support it. It is, however, insisted that, under section 5204 of the Civil Code, parol evidence is admissible to prove other portions of the contract. Not so. The provisions of that section do not apply to contracts covered by the statute of frauds. By the latter, contracts which fall within its inhibition are not valid unless in writing. The authority relied on refers exclusively to contracts which are not by law required to be in writing, but

which by the parties are partially put in writing; in those cases alone the rule is, that if any part of the contract has been omitted from the writing, parol evidence may supply that portion, provided it is not inconsistent with what has been written.

It is further contended that the plaintiff in error has admitted the interpretation of the contract as to matter of description placed upon it by the defendants. That may be, but he makes the question directly that he is not bound by the contract, because it is obnoxious to the statute of frauds. In the case of *Hollingshead* v. *McKenzie,* 8 *Ga.* 457, this court held that where a defendant admitted the parol agreement and yet by his answer insisted upon the benefit of the statute of frauds, he was entitled to it, notwithstanding such admission, citing Story's Eq. Pl. § 763. The defendants, in their answer, place their right to cut and remove the timber on the land of the petitioner on the written contract. For the reasons above given, that contract must be held invalid; it neither gives to the defendants title to the timber, nor the right to have the title vested in them. This being true, they must rely upon something besides their writing, to give them the legal right to this interest in the realty. Whether they can or will do so hereafter is not a matter with which we are now concerned. It is certain that they have no such title, under the case made by the pleadings; and having no right of entry on the land, title to which they admit is in the petitioner, they can not be allowed to cut and remove the timber therefrom, without showing the existence of that right by other means than the contract on which they rely. The court, therefore, erred in refusing the injunction; and the judgment is	*Reversed. All the Justices concurring.*

Under the facts disclosed by the record it was error to grant a nonsuit.