## BRAGDON et al. v. WILLIAMS.

1. A written instrument purporting to lease and convey, for turpentine purposes, certain tracts of land and the timber thereon, which is inoperative and ineffectual to convey the interest which it purports to convey, because of a lack of sufficient description of the subject-matter of the writing, which is signed merely by the owner of the property and not by the lessees, could not be the basis for a suit against the alleged lessees to compel them to pay for trees which are not boxed, the contract providing merely, after stating that a certain amount had to be paid in cash by the lessees, that they should pay a stipulated sum per thousand boxes at the rate of a stated amount per thousand cups, the amount stipulated to be paid per thousand cups becoming payable when the trees were cupped. The clause in the writing referred to above, that "it is agreed to by the parties of the second part that they shall cup the said timber as close as other timber in this territory is customarily cupped," was not binding upon the parties of the second part, the defendants, as the paper was never signed by them.

2. Where the owner of lands upon which there is growing timber suitable for turpentine purposes entered into a parol contract with another, whereby the latter, for a stipulated amount per thousand boxes, might cup the trees upon the lands, it being agreed that the lands should be "cupped as close as other timber in this territory is customarily cupped," and the party acquiring the right to turpentine the timber cupped about one half of the trees, leaving the other half suitable for turpentine purposes uncupped, the owner of the lands could not, after the time within which the privilege of working the trees for turpentine purposes had expired, maintain a suit for specific performance, without granting to the party who it is claimed had a right to turpentine the timber a reasonable time within which to cup the trees and exercise the privileges granted under the contract. If the owner of the lands had a valid cause of action against the parties who had purchased the right to cup the trees under this oral contract, it was for a breach of the contract, the measure of damages being the stipulated price for cupping and what the trees were worth as they were left standing uncupped.

No. 4441.  OCTOBER 20, 1924.

Specific performance. Before Judge W. E. Thomas. Brooks superior court. May 27, 1924.

J. J. Williams brought suit against Bragdon and Brooks, to recover a balance due on the purchase-price of certain timber leased by Williams to Bragdon and Brooks for turpentine purposes. The petition is in two counts. The first count sets forth a written contract, which is signed by J. J. Williams, the plaintiff, but not by Bragdon and Brooks; but this count charges a part performance of the contract, which it is alleged is sufficient to take the contract out of the statute of frauds. The part performance charged is the

payment by Bragdon and Brooks of a part of the purchase-price, to wit, one thousand dollars, at the time of the making of the contract, and thirteen hundred and forty dollars later on, and possession of the entire tract of land by Bragdon and Brooks for the entire period of the contract. The second count disregards the written contract and alleges an oral contract partially performed, the partial performance being the same as above stated. The contract was made on the 20th day of November, 1919, and provides that the lease will expire on December 30, 1923. The language used in the granting portion of the contract is that "the party of the first part [Williams] has granted, bargained, leased, and conveyed to the parties of the second part [Bragdon and Brooks], their heirs and assigns, at the rate of $260.00 per thousand cups, all of the timber upon the following described land for the purpose of boxing, working, and otherwise using said timber for turpentine purposes." The contract also provides that "it is agreed by the parties of the second part that they shall cup said timber as close as other timber in this territory." The petition alleges, that Bragdon and Brooks paid the $1000 down; that Williams let them into the possession of the entire tract of timber described in the petition; that they were in the possession of said timber for turpentine purposes during the entire time in which they were entitled to enter upon the land and cup said trees for said purpose; that they did actually put on 9000 cups; that the cupping seasons of the contract had all passed; that under the terms of the contract the balance of the purchase-money is due; and the balance of $2340 is ascertained in the petition by the statement that 9000 other cups could have been put upon the timber.

The petition was demurred to by the defendants; and after amendment the demurrers were in part as follows: that neither of the counts in the petition set forth a cause of action, but the lease was unilateral and unenforceable; that the contract sought to be enforced was within the statute of frauds, and the writing embodying the contract did not meet the requirements of the statute; that in so far as the plaintiffs rely upon the oral contract set forth in the second count, it is a contract concerning real estate, and the facts alleged are not sufficient to take the contract without the statute of frauds; that the damages alleged are not the proper

damages, if any, for the breach of the contract involved. The court overruled the demurrers, and the defendants excepted.

*Sam T. Harrell,* for plaintiffs in error.

*Branch & Snow,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The petition contains two counts, the first of which sets forth a written contract which purports to lease and convey unto the defendants and their assigns certain tracts of land for the purpose of boxing and working the timber thereon for turpentine purposes. It is unnecessary to set out the description given of the different tracts of land embraced in this lease. For want of description of the property leased and conveyed, it is inoperative and void. This is conceded by the plaintiff in the case, but he claims that there was such a part performance as to take the case out of the statute of frauds and to cure the defects in the contract. Whether or not there was such an oral contract performed by the plaintiff and left unperformed by the defendants, as entitles the plaintiff to the judgment prayed, depends upon whether or not there was a valid oral contract which is set forth in the second count; and we will deal with that question in considering the demurrers to the second count. The plaintiff could not recover upon the case as made in the first count, which is based upon a lease that is entirely inoperative because of a lack of description of the property conveyed. That the description is insufficient is conceded by the defendant in error. It merely refers to parts of certain lots of land by number, without other words of description. And this instrument is not signed by the defendants. No promise is made or obligation entered into by them. Hence the court erred in not sustaining the demurrer to the first count.

2. We are further of the opinion that the demurrer to the second count should have been sustained. This is based upon an oral agreement, which was in substance that the plaintiff leased to the defendants all of the timber upon certain described tracts of land, upon the agreement and understanding between the lessor and the lessees that the latter would pay for the turpentine privilege the sum of $1000 in cash and the balance when the timber was cupped, at the rate of $260 per one thousand cups, and that "said timber was to be cupped as close as other timber in said territory was customarily cupped." It was further alleged that the defend-

ants paid the cash sum of $1000, and proceeded to cup the timber in the cupping season of 1920 and placed 9000 cups upon the timber, and paid the sum of $1340 in addition to the $1000 above mentioned, making a total sum of $2340, which was at the rate of $260 per thousand cups for the 9000 cups put upon the trees. It is alleged that the time within which the cups may be put upon these trees has expired, and that the defendants have failed and refused to put cups on the trees other than the 9000 above referred to as having been cupped, although a member of the defendant firm had repeatedly promised to put cups upon the remaining trees and pay petitioner the price agreed therefor. It is further alleged in the second count: "That at the time said timber was leased to the firm of Bragdon and Brooks, it constituted a salable turpentine farm because of the number of trees suitable for turpentine purposes; but the defendants having used practically one half of said timber for said purposes, the balance of 9000 cups would be a much less salable and a much less attractive proposition, by reason of the above-stated facts. That petitioner relied upon the repeated promises of the said B. Bragdon, for the firm of Bragdon and Brooks, and for himself, that he would cup the balance of said timber and pay for the same, and has not at any time attempted to sell the balance of said timber for turpentine purposes to any one else. That said above-mentioned oral contract has not only been partially performed as aforesaid, but has been so partially performed as to render it a fraud upon your petitioner for the said Bragdon and Brooks to fail and refuse to perform the entire contract. That there are still upon said land pine trees suitable for turpentine purposes, on which 9000 cups could be placed and be operated for turpentine purposes. That by reason of the above-stated facts the defendants, Bragdon and Brooks, are indebted to your petitioner in the sum of $2340.00, with interest at the rate of seven per cent. per annum from the first day of April, 1923." The petition was amended by giving additional description of certain of the tracts of land upon which the timber stood, and also more fully showing that the body of turpentine timber was more valuable where properly cupped than where only partially cupped, as it is alleged the defendants had cupped it.

The plaintiff seeks to recover in this case the full price per thousand boxes for all of the timber-that could and should have been

cupped under the alleged contract, insisting that he is entitled to specific performance on the part of the defendants. We do not think he is entitled to the specific performance upon which he insists; that is, that he should have the full price for the trees that might have been cupped and were not cupped. He is not entitled to specific performance, because that is impossible. The cupping season expired before this suit was filed. The 9000 trees that might have been cupped stand there on plaintiff's lands. To use the language in the petition, it may not be "as attractive a proposition" as it was with all the trees standing uncupped; but surely the trees that are not cupped have a considerable part of their value still left. The turpentine in those trees is evidently valuable; if not as valuable per tree as it was before a part was actually worked, it still has value. And plaintiff can not recover, as in the case of specific performance, the full price specified in the contract, in the absence of an offer to give the defendants a reasonable time to cup the remaining half of the trees. Plaintiff alleges that the time for cupping under the contract has expired, and makes no offer to extend the time. He does not put himself in a position to recover the full price of the trees for turpentine purposes. All that he could recover would be the difference between the value of the trees for turpentine purposes as they stand and the amount contracted to be paid at the stipulated price of $260 per thousand cups. He does not sue for that. He does not sue for a breach of the contract, but sues for specific performance; and a judgment for specific performance in this case would not be equitable under the facts of the case. And whether or not he could recover for a breach of the contract depends upon whether or not the oral contract for this lease and conveyance of the turpentine privileges was taken out of the statute of frauds by part performance. We do not decide that question now, because plaintiff is not suing for a breach of the contract, but plants himself upon his right to specific performance. See, in connection with what we have said above, the decisions by this court in the case of *Baucom* v. *Pioneer Land Co.*, 148 *Ga.* 633 (97 S. E. 671), and cases there cited; *Douglass* v. *Bunn,* 110 *Ga.* 159 (35 S. E. 339).

*Judgment reversed. All the Justices concur.*