*L. D. Moore* and *S. W. Hatcher,* contra.

---

## MULLER *v.* COOPER *et al.*

1. A bill of exceptions may be amended by adding the names of parties defendant in error who are bound by entry or acknowledgment of service. Park's Code, § 6164(b).
2. Statement of essentials of memorandum of contract constituting valid sale of realty, as basis for decree of specific performance.
3. Petition for specific performance, *held* not demurrable generally, where contract of sale was certain as to parties, description of realty sold, amount of consideration or purchase-price, and how it was to be paid. Parol evidence would be competent to make certain the intention of the parties as to the manner of payment.
4. Former decisions do not require a different ruling.

No. 5925. JANUARY 10, 1928.

Equitable petition. Before Judge Pomeroy. Fulton superior court. February 25, 1927.

Mrs. Julia M. Muller filed an equitable petition against George W. Cooper, praying for a decree of specific performance by defendant of the terms of a certain contract of purchase; and that, in the event such decree could not be entered, she have judgment against the defendant in the sum of $150,833.37 as damages. The contract in question was as follows:

"State of Georgia—County of Fulton. Atlanta, Ga., December 3, 1926. The undersigned hereby agrees to purchase through Gunter-Mitchell Co., Agents, the following described property,

Appeal and Error, 4 C. J. p. 314, n. 13; p. 316, n. 28.

Evidence, 22 C. J. p. 1168, n. 18.

Specific Performance, 36 Cyc. p. 587, n. 75; p. 591, n. 83; p. 595, n. 4; p. 596, n. 5, 6; p. 773, n. 52; p. 775, n. 58.

to wit: All that parcel or tract of land lying and being in the City of Atlanta, Fulton County, Georgia, more particularly described as a lot lying on the eastern side of Peachtree Street, between Ponce de Leon Avenue and Third Street, said lot fronting 111 feet, more or less, on Peachtree Street, and running to a depth of 140 feet, more or less, said lot being improved with a 12-story building known as the Carlton Apartments, and number 591 Peachtree Street, according to the old way of numbering in the City of Atlanta, Georgia. For the sum of seven hundred and seventy-five thousand dollars ($775,000), to be paid as follows: Assume a first loan consisting of an Adair bond issue for $500,000, which has been reduced to $491,666.63, a second loan of $25,000 payable $1000 per month, with 7% interest, a third loan of $87,000 payable $1000 per month, with 7% interest, assume a balance due on furniture to Mather Bros., $10,500, payable $500 per month. Said bond issue payable as attached schedule. Give in trade all that tract or parcel of land lying and being in the City of Atlanta, Fulton County, Georgia, and described as a lot fronting 200 feet, more or less, on the eastern side of Peachtree Street, between 15th and 16th Streets and running to a depth of 180 feet, more or less, and being 75 feet, more or less, in the rear, said lot being improved with a two-story stucco apartment building known as the Peachtree Court Apartments and known as number 1035 Peachtree Street, according to the old system of numbering in the City of Atlanta, Georgia. Said apartment building and lot to be conveyed subject to the following indebtedness, which indebtedness is to be assumed: Assume a first loan to be placed, said mortgage to bear 7% interest per annum, and reducing principal sum $6250 per year, for $200,-000, which is the principal sum. Assume a second loan of $20,-000 to be placed, payable at the rate of $370 (three hundred and seventy dollars) per month, with 7% interest, each note bearing its own interest. Taxes against the Carlton Apartments to be assumed by purchaser. Peachtree Court to be conveyed with all taxes up to and including 1926 to be paid. Rents and insurance on all properties affected by this exchange to be prorated and adjusted as per date of final consummation of this contract. Coal in each building to go with property. All loans, liens, or encumbrances of any nature other than those specified above are

to be paid off on or before date of final consummation of this contract. It is agreed that vendors of property herein contracted to be conveyed shall furnish good marketable titles, and purchasers shall have a reasonable time in which to investigate same. In case titles are objected to, vendors shall be furnished with a written statement of all objections and allowed a reasonable time thereafter in which to furnish a valid title. It is agreed that all papers legally necessary to carry out the terms of this contract shall be executed and delivered as soon as validity of titles have been established. This contract is open for acceptance until the end of 31st day of December, 1926. [Signed] Geo. W. Cooper, Purchaser's Agent. This proposition is hereby accepted this 3rd day of December, 1926. [Signed] Mrs. Julia M. Muller, Owner."

The defendant demurred, the plaintiff amended, and the demurrers were renewed, they having to do with the contract itself mainly. One of the general grounds of demurrer was: "Because the contract on which said petition is based is void and unenforceable, for the reason that same is too vague and indefinite to be enforceable in law." The court did not pass upon a special demurrer, but sustained all the grounds of general demurrer, except one to the effect that the petition set forth no proper or legal measure of damages. The action was dismissed. To these rulings the plaintiff excepted.

*Kendrick Scott* and *Little, Powell, Smith & Goldstein,* for plaintiff.

*Troutman & Troutman* and *Candler, Thomson & Hirsch,* for defendant.

PER CURIAM. 1. In view of the amendment to the bill of exceptions, making certain parties defendants in error, the motion to dismiss the writ of error is denied.

2. To constitute a valid sale of real estate which a court of equity will require to be specifically performed, the following are the essentials to the contract of such sale: (1) the memorandum of contract must specify the parties, that is the seller and the buyer; (2) the memorandum must sufficiently describe the subject-matter of the contract; and (3) the memorandum must name the consideration. The consideration need not be expressly stated if the memorandum of contract furnishes a key by which the amount of the purchase-price can be ascertained. If the con-

sideration is not all to be paid in cash, then the times and amounts of deferred payments must be specified. When the contract expressly states the amount of purchase-money or furnishes a key by which it can be ascertained. then the contract is sufficient. The principles here stated are in accord with decisions of the courts of last resort in many of the States of this country, as will appear from examination and analysis of the following cases: Wagner *v.* Eustathiw, 169 Cal. 663 (147 Pac. 561); Ehrenstrom *v.* Phillips, 9 Del. Ch. 74 (77 Atl. 80); Inglis *v.* Fohey, 136 Wis. 28 (116 N. W. 857); Nelson *v.* Husted, 182 Fed. 921; Kipp *v.* Laun, 146 Wis. 591 (131 N. W. 418); Kerr *v.* Moore, 6 Cal. App. 305 (92 Pac. 107); Meyer *v.* Jenkins, 90 Ark. 209 (96 S. W. 991); Dingman *v.* Hilberry, 159 Wis. 170 (149 N. W. 761); Caplan *v.* Buckner, 123 Md. 590 (91 Atl. 481). Other cases might be added to this list, but to do so would be a duplication of the citations made in the cases listed.

3. The court erred in sustaining the general demurrer to the petition. The contract, which is shown in full in the statement of facts, is certain as to the parties to the contract, the gross consideration, and the description of the property which was the subject of the sale. It is insisted that the provision of the contract as to the payment of the purchase-price was "too vague and indefinite to be enforceable in law." The contract names a definite sum, to wit $775,000, as consideration. It further provides how that sum is to be paid, and it is to the latter provision that the criticism is applied. The intention of the parties may be shown, and the manner of payment made certain, by resort to parol evidence.

4. The decision in *Trust Co. of Ga.* v. *Neal,* 161 *Ga.* 965 (132 S. E. 385), does not require a ruling contrary to the above. It may be said that the decision cited reached the extreme limit to which we are willing to agree. The authorities cited to support the ruling there made are not contrary to the rulings in the preceding paragraphs. The cases of *Tippins* v. *Phillips,* 123 *Ga.* 415 (51 S. E. 410), and *Young* v. *Flournoy,* 139 *Ga.* 634 (77 S. E. 807), dealt exclusively with the sufficiency of the description of the land mentioned in the contracts. None of those cases, nor *Crawford* v. *Williford,* 145 *Ga.* 550 (89 S. E. 488), was a full-bench decision; and consequently they are not binding authorities.

*Judgment reversed. All the Justices concur,* except
ATKINSON and HILL, JJ., who dissent save as to the ruling of
practice in the first paragraph.

RUSSELL, C. J., and HINES, J. We concur in the result
reached by the majority of the court in this case, but we adhere
to our dissent in *Trust Company of Georgia* v. *Neal,* 161 *Ga.* 965.

HILL, J. The sole question relied on and argued by the plain-
tiff is whether or not the terms of the contract, with respect to
the loans to be assumed by the parties, are sufficiently clear to
support a petition and prayer for specific performance, with an
alternative prayer for damages. Counsel for the defendant rely on
the case of *Trust Company of Georgia* v. *Neal,* 161 *Ga.* 965
(supra), where this court decided: "A paper provided: 'The
undersigned hereby agrees to purchase . . the following de-
scribed property, to wit [then follows a description of particular
realty], for the sum of twenty-seven thousand, five hundred dollars
($27,500), to be paid as follows: Assumption of loan $9,500, cash
$7,000, and the balance represented by [then follows a descrip-
tion of other realty]. [Signed] L. G. Neal. The above proposi-
tion is hereby accepted. . . [Signed] D. J. Griffin.' *Held,*
that the language, 'assumption of loan $9,500,' construed in
connection with its context, is too indefinite to identify any par-
ticular loan." Counsel for the plaintiff insists that the prin-
ciple so ruled, and the decisions on which the *Neal* case was
based, are not controlling here; that the *Neal* decision merely
held that the provision of the "assumption of loan of $9,500" was
too uncertain, because the date of the payment of the loan was
not stated, whereas the contract now under consideration, spe-
cifically states both the date of payment and the amount of in-
terest due on each particular item of indebtedness to be assumed
by both parties. While of course the two contracts are not
identical in terms, I am of the opinion that they are nearly
enough so for the principle ruled in the one to be controlling in
the other. Let us examine and analyze the language of the con-
tract in the present case. The description of the first loan is
that Cooper is to "assume a first loan consisting of an Adair bond
issue for $500,000, which has been reduced to $491,666.63, . .
said bond issue payable as per attached schedule." No schedule

is attached to the contract, and it is therefore incomplete. From the contract itself it is impossible to determine when the bond issue is payable, or how. It fails to state when the loan is due; whether it is to be paid annually, monthly, or when. The contract does not state who are the owners or holders of the bonds, nor how they are secured, if at all. It does not state the rate of interest to be paid on the first loan. Nothing is mentioned in connection with the first loan, except the principal amount of same, "which has been reduced to $491,666.63." As to the second loan, the contract contains this language: "a second loan of $25,000, payable $1,000 per month, with 7% interest." This language does not identify any particular loan; it does not state to whom the loan is payable, when the payment of $1,000 per month is to commence, or whether there is a loan deed, and if so, where it is or who owns it. The third loan is just as indefinite as the second. The contract merely states, "a third loan of $87,000, payable $1,000 per month with 7% interest." What is the date of this loan? To whom is it payable? Who is the owner of it? None of these and other questions which might be asked are answered by the contract itself in order to make it reasonably certain. Then, there is the reference in the contract to the furniture loan which Cooper was to assume, as follows: "assume a balance due on furniture Mather Bros., of $10,500, payable $500 per month." What furniture is covered by this contract? There is nothing in the contract itself to identify the furniture referred to, nor when the $500 monthly payment begins, what interest, if any, is to be paid. The contract does state the name of the payee here, but only the principal sum to be paid is mentioned, and the fact that it is to be paid monthly. In a supplemental contract included in the record it is stated that "the attached list is a copy of personal property of Mrs. J. M. Muller, which is not to be included in the sale of the Carlton;" but no list of the furniture of Mrs. Muller is attached to the contract, so far as the record in this case shows. In fact, there is no description of any furniture which was being bought, sold, or exchanged by the parties in or attached to the contract.

In view of the above provisions of the contract under consideration, I am of the opinion that it is too vague and indefinite to be enforced, or to withstand a general demurrer. The

Civil Code (1910), § 3222, provides that in order to make any contract respecting the sale of lands binding, it must be in writing and signed by the party to be charged therewith. This implies, of course, that the contract must be reasonably complete within itself, that is, it must be sufficiently definite and certain in order to be enforced. Every essential element of the sale must be expressed in the writing, to meet the statutory requirement of this provision. One of the essential elements in the sale of real estate is that the land must be so described as that it is capable of identification. While it is not necessary that the land be described with such precision that its location and identity are apparent from the description alone, yet the description must be sufficiently clear to indicate with reasonable certainty the land to be conveyed. *Tippins* v. *Phillips,* 123 *Ga.* 415, 417 (supra); *Durham* v. *Davison,* 156 *Ga.* 49, 54 (118 S. E. 736). See also *Douglass* v. *Bunn,* 110 *Ga.* 159 (35 S. E. 339). While parol evidence may be admitted to explain ambiguities, it is not admissible to supply a description which is entirely wanting in the writing. *Douglass* v. *Bunn,* supra. Applying the rulings made in the *Tippins* case, and others, to the present, the description in the contract in the instant case, with respect to the first, second, and third loans, or of the furniture, I am of the opinion that they are too vague and indefinite to be the basis of a petition praying for specific performance. In order to have specific performance the complainant must make a clear case, and the contract he sets up must be specific. *Prater* v. *Sears,* 77 *Ga.* 28 (2 *b*).

If the contract is too indefinite to authorize the specific performance, can damages for its breach be alleged and recovered in such case? This court has held that if the contract sought to be enforced is so vague and indefinite in its terms as will not authorize a court of equity to decree specific performance, the plaintiff can not allege and recover damages for a breach of the contract. *Tippins* v. *Phillips,* and *Crawford* v. *Williford,* supra. So, I reach the conclusion that the court below did not err in sustaining the general demurrer and in dismissing the petition. Justice Atkinson concurs herein.