## 35961. BELLER & GOULD v. LISENBY et al.

HILL, Justice.

Beller & Gould, a partnership engaged in the real estate business, sued the Lisenbys for specific performance of a letter of intent to acquire a tract of real estate in Fulton County owned by the Lisenbys. Plaintiff contends that its letter, signed and accepted by the Lisenbys, constituted a legally enforceable contract under which plaintiff had an option to purchase the defendants' property until November 15, 1977, and that defendants breached the contract by refusing to convey the property after plaintiff's timely exercise of the option.

At trial, the defendants contested the validity of the contract and moved for a directed verdict at the conclusion of plaintiff's case. The trial court granted the defendant's motion based on insufficiency of the purported agreement and the plaintiff appeals.

The sole question presented by this appeal is whether the purported agreement failed as a matter of law to satisfy the requirements for specific performance. The letter, dated July 14, 1977, provided as follows:

"Re: Community Unit Plan Development 58 ± Acres, Located in Land Lots 164 & 165 of the 17th District, Fulton County, Georgia

"Dear Mr. & Mrs. Lisenby:

"After reviewing the proposed development prepared in 1974 on the referenced property, we have concluded that this plan is the most feasible approach. We feel that the 28 lot planned residential community as prepared by Harland Bartholomew & Associates would be of interest to us. We wish to purchase this development *following their basic concept under the following conditions:*

"1) The purchase price will be $12,000 per acre excluding your residence.

"2) *At your option* we will have your home and property appraised by three qualified residential appraisers *acceptable to both parties* and have the average of these three appraisals added to the total purchase price.

"3) *We option to purchase the referenced property extending through noon on November 15, 1977.* At any time during this period that we are able to pre-sell twelve lots, we will purchase the property as outlined above and arrange for immediate closing.

"4) Beller & Gould will at their expense employ an engineering firm to flag the boundary lines of the lots and prepare a walk way through the property so that these lots may be shown.

"5) Beller & Gould will at their expense prepare a promotional program.

"6) *You have an option to purchase any one lot in the development that has not already been committed. For you to exercise this option a down payment of 20% of the purchase price must be paid in escrow. You are entitled to a 10% discount for the purchase of your lot based on the price schedule by Beller & Gould. This option will expire at the time of the closing of the purchase of the referenced property.*

"7) Assuming the pre-sell program is successful, Beller & Gould will purchase the referenced property at the above outlined price. The down payment to you will be calculated at a per acre release price of $15,000. The balance to be paid one year interest only with a three year payout with releases at $15,000 per acre times the number of acres contained in each lot released. This payment applies to the first principal payment due. The interest on this mortgage shall be calculated at 8%. *The Seller has the right to accept at his option substitute collateral in exchange for any portion of the release price.*

"8) If at the end of November 15, 1977, Beller & Gould wish to continue with the pre-sell program, however, they have not received the twelve contracts, they will at that time pay you $3,000 per month cash to be applied to the purchase price. *This option may be extended under the same terms and conditions as outlined herein on a month to month basis not to exceed a total of six months.*

"9) Should the pre-sell development program not be successful, Beller & Gould will turn over the engineering and promotional material prepared as full consideration for the option.

"We wish for this letter to serve as a letter of intent from Beller & Gould to you on this outlined proposal. If the terms as outlined are acceptable, indicate your acceptance below." (Emphasis supplied.)

This letter incorporated some changes which had been insisted upon by Mr. Lisenby after he had consulted his attorney.[1] As indicated above, the letter was signed by Beller & Gould and was accepted and signed by the Lisenbys.

The plan for the 28 lot residential community prepared by Harland Bartholomew in 1974 encompassed 57.6 acres more or less,

---

[1]The italicized terms of the letter were included at Mr. Lisenby's request.

described by courses and distances. The plan excluded the Lisenby's existing residence and the lot on which it was located, describing this lot by courses and distances (a subsequent survey showed that the 28 lot plan consisted of 57.58 acres and the existing residence lot consisted of 2.68 acres). The Lisenbys later decided to retain their residence. Thus they did not exercise either of their options under paragraphs 2 or 6 of the letter.

The buyer surveyed and flagged the streets and lots, developed a sales promotional program and ultimately sold 10 lots to 9 purchasers. Each of the 2 partners also contracted to buy a lot from their partnership, but without any down payment from them.

Prior to November 15, 1977, the purchaser notified the buyer that it would exercise the option. After negotiations broke down over a more formal sales contract and the closing documents, the sellers notified the buyer in December that the sellers found the option not to be binding. The buyers nevertheless set January 19, 1978, as the date for closing and informed the sellers that there would be no releases requested at closing. The sellers notified the buyer that they would not appear at the scheduled closing and that they were negotiating with other prospective purchasers. This suit was instituted 4 days later.

Evidence of the foregoing facts was introduced at trial and a qualified appraiser testified that the price of $12,000 per acre was fair and reasonable to the sellers. There was also considerable testimony at trial as to the parties' interpretations of the July 14 letter and of their continued negotiations. The bulk of this testimony is not material to the enforceability of the agreement as against a motion for directed verdict.

1. In *Muller v. Cooper,* 165 Ga. 439, 441-442 (141 SE 300) (1927), on which the sellers rely, the court found as follows: "To constitute a valid sale of real estate which a court of equity will require to be specifically performed, the following are the essentials to the contract of such sale: (1) the memorandum of contract must specify the parties, that is the seller and the buyer; (2) the memorandum must sufficiently describe the subject-matter of the contract; and (3) the memorandum must name the consideration. The consideration need not be expressly stated if the memorandum of contract furnishes a key by which the amount of the purchase-price can be ascertained. If the consideration is not all to be paid in cash, then the times and amounts of deferred payments must be specified. When the contract expressly states the amount of purchase-money or furnishes a key by which it can be ascertained, then the contract is sufficient."

The July 14 letter specifies the parties and shows their assent

to its terms. The property is sufficiently described by reference to the Harland Bartholomew plan. *Roberts v. Billingsley,* 215 Ga. 666 (112 SE2d 766) (1960); *Furney v. Dukes,* 226 Ga. 804 (177 SE2d 680) (1970). The price of $12,000 per acre, along with the description of the property from which the acreage can be determined, is sufficient as a key from which the purchase price can be ascertained. *Muller v. Cooper,* supra; *Bowles v. Babcock & Wilcox Co.,* 209 Ga. 858 (76 SE2d 703) (1953).

2. The principal matter here in dispute is not the purchase price as such — it is ascertainable — but the payment thereof, namely the down payment at closing and the balance due thereafter (see paragraph 7 of the letter). The balance to be paid "one year interest only with a three year payout" requires that the unpaid balance be paid in three installments after the first year at 8% interest only. There was testimony at trial that it was understood that the three installment payments of principal would be equal. The provisions of the agreement as to payment of the balance thus satisfy the requirement that "the times and amounts of deferred payments must be specified." *Muller v. Cooper,* supra, 442.

Regarding the down payment, it was specified that it would be "calculated at a per acre release price of $15,000." The parties concede that the agreement provides that the number of acres to be released was not tied to the sale of lots but was to be determined by the buyer. Hence, if the buyer chose not to release acreage at closing (as occurred), then there would be no down payment.

A contract which does not provide for a down payment can nevertheless be specifically enforced. As was said in *Irvin v. Locke,* 200 Ga. 675, 676 (38 SE2d 289) (1946): "The contract sued upon is not unconscionable, in that it did not require a down payment for the land. If the vendor was willing to extend credit for the first payment, as provided by the contract, no legal obstacle prevented him from so doing." Here, as in *Irvin v. Locke,* supra, if the seller was willing to extend credit for the first payment, as provided by the agreement, no legal obstacle prevented him from doing so. The agreement is not unenforceable due to lack of a down payment.

3. The agreement is not, as contended by the seller, violative of the Statute of Frauds for the reason that the purchase price is set out in the writing (see Division 2, above).

Mr. Lisenby contends that he never assented to close the sale with no down payment. The assent of the parties is shown by the agreement and it is not so vague, indefinite and uncertain as to be incapable of specific performance. That other terms were discussed which could have been included in the agreement does not make it unenforceable. Mr. Lisenby did not insist in the agreement that it

qualify as an installment sale for tax purposes.

The fact that the closing documents prepared by the purchaser for use at the proposed January 19 closing varied from the July 14 letter is not material because the sellers previously had declared their refusal to close. Other objections to the agreement raised by the defendant have been considered and found not to justify the direction of a verdict against the plaintiff.

We do not by anything said in this opinion find that the various keys set out in the agreement were legally sufficient without reference to extrinsic evidence as to the property description, purchase price, and balance due to demand a verdict in favor of the plaintiff. We do find, however, that the agreement was sufficient to justify consideration of the evidence by the trier of fact and to preclude the grant of a directed verdict.

*Judgment reversed. All the Justices concur.*

ARGUED FEBRUARY 12, 1980 — DECIDED
MAY 21, 1980 —
REHEARING DENIED JUNE 9, 1980.

*McCauley, Owen & Sweeney, Timothy J. Sweeney,* for appellant. *Hansell, Post, Brandon & Dorsey, F. Carlton King, Jr.,* for appellees.