## ROME INDUSTRIAL INSURANCE COMPANY v. EIDSON.

1. A policy of insurance required the payment of a weekly premium, and declared that, if any payment should not be made when due, the policy should be void. It also contained this clause: "Its terms can not be changed, or its conditions varied, except by a written agreement signed by the president or secretary of the company. Therefore agents (which term includes superintendents and assistant superintendents) are not authorized and have no power to make, alter, or discharge contracts, waive forfeitures, or receive premiums on policies in arrears more than four weeks. . . Should this policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured." *Held*, that the company could thus limit the authority of its agents as to waiving forfeitures or receiving overdue premiums; and one who accepted a policy with these terms in it was charged with notice of such limitations.

2. Under such a policy, it was error to admit evidence tending to show that when the wife of the insured went to the local assistant superintendent, in a city other than that where the home office of the company was located, seeking to have a lapsed policy revived, and paid to him past-due premiums, she informed him of a sickness which her husband had undergone and offered to have an examination made, and that the assistant superintendent told her it would be unnecessary, that he would see the physician, that she was "all right," and that the policy was as good as ever. In the absence of any enlargement of the authority of the agent, or ratification of his acts, such assurances by him were beyond his authority.

3. The evidence did not authorize the court to charge in effect that if the jury believed that after lapse the policy was revived, or again brought into force and effect by the company and the insured, and if under such revival the premiums and assessments past due were paid and accepted by the company, then, if the premiums were kept up and the terms of the policy otherwise complied with on the part of the insured, the company would be liable; or to charge that the company could not accept default payments, if any were made to it, with knowledge of the default, and retain the premium until after the death of the insured, and then repudiate the payment and liability under the policy and retain the premium.

4. Where a policy of life insurance provided that if any premium should not be paid when due, the policy should become void, but that a lapsed policy might be revived upon payment of all arrears and "the presentation of evidence satisfactory to the company of the sound health of the insured," it was error to charge that evidence of health, if presented, "ought to have been strong enough to have been satisfactory to the company, or sufficient to have been satisfactory to a reasonable man."

AUGUST 19, 1912.

Action upon insurance policy. Before Judge Ellis. Fulton superior court. March 6, 1911.

*Anderson, Felder, Rountree & Wilson* and *Dean & Dean,* for plaintiff in error.

*Napier, Wright & Cox* and *Stevens & Ogburn,* contra.

LUMPKIN, J.  Mrs. Julia Eidson brought suit against the Rome Industrial Insurance Company, on a policy issued upon the life of her husband.  The insured was required to pay a weekly premium of seventy cents.  The policy also contained the following terms: "This policy is issued upon an application which omits the warranty usually contained in applications, and contains the entire agreement between the company and the insured and the holder and owner hereof.  Its terms can not be changed, or its conditions varied, except by a written agreement signed by the president or secretary of the company.  Therefore agents (which term includes superintendents and assistant superintendents) are not authorized and have no power to make, alter, or discharge contracts, waive forfeitures, or receive premiums on policies in arrears more than four weeks, or to receipt for the same in the receipt-book, and all such arrears given to an agent be at the risk of those who pay them, and shall not be credited upon the policy, whether entered in the receipt book or not.  If this policy be assigned or otherwise parted with, or if any erasure or alteration be made therein, except by endorsement signed by the secretary, or if any premium shall not be paid when due, this policy shall be void. . .  Should this policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured."

It was conceded that the policy lapsed in February, 1908, for non-payment of premiums.  But the plaintiff contended that it was renewed in August following, before the death of her husband, the insured.  The jury found for the plaintiff.  The defendant moved for a new trial, which was refused, and it excepted.

·1, 2.  The policy on its face contained limitations on the authority of the agent.  The company could waive a forfeiture by its conduct, without a written entry; and it would doubtless not be permitted to dally with an insured by accepting his money and application for a revival, retaining them an unreasonable time, and rejecting the application after his death.  *Georgia Masonic Insurance Company* v. *Gibson,* 52 *Ga.* 640.  Some courts hold that

a general agent of the company can waive a forfeiture by reason of the apparent authority conferred on him as an agent, in spite of provisions like those contained in this policy. But this court is committed to the doctrine that the company can limit the authority of the agent effectively as to one who has notice of the limitation, and that such terms in the policy charge the insured with notice. *Hutson* v. *Prudential Ins. Co.*, 122 *Ga.* 847 (50 S. E. 1000); *Vardeman* v. *Penn Mutual Life Ins. Co.*, 125 *Ga.* 117 (54 S. E. 66, 5 Ann. Cas. 221); *Bank of Commerce* v. *New York Life Ins. Co.*, 125 *Ga.* 552 (3), 557 (54 S. E. 643). It was accordingly error to admit evidence to the effect that the assistant local superintendent undertook to waive requirements of the policy as to revival, and also assured the wife of the insured that the policy was as good as ever, unless such acts were brought to the knowledge of the company and ratified by it. It may be unfortunate if the wife of the insured relied on such statements of the agent; but if one takes a policy containing such limitations upon the authority of the company's agent, he has to abide by the agreement, unless it is waived by some one having greater authority than the agent.

This ruling is not in conflict with those which hold that in the inception of the contract, in consummating the insurance and putting the policy in force, knowledge of the agent entrusted with doing so is attributable to the company, and waives a condition against its going into effect, arising from facts so known. *Johnson* v. *Ætna Ins. Co.*, 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92). In the latter case, the policy is being put in force. In the former, it is in force, and its terms govern the future power of an agent to waive forfeiture.

3. The court charged in substance that if, after the policy lapsed, it was again brought into force and effect by the parties to it, the company and the insured, and if, under such revival, the premiums and assessments past due were paid and accepted by the company, then if the premiums were kept up and the terms of the policy otherwise complied with on the part of the assured, the company would be liable. He also charged that the company could not accept default payments, if any were made to it, with knowledge of the default, and retain the premium until after the death of the assured, and then repudiate the payment and lia-

bility under the policy and retain the premium. We fail to find in the record evidence authorizing these charges. The policy lapsed in February, 1908, for non-payment of premium. No effort to revive it was made until the following August. The insured then signed an application for that purpose, and his wife paid to one of several agents known as "assistant superintendents" in the company's Atlanta office the amount necessary to cover the monthly premiums due from February until that time. The evidence tended to show that the agent forwarded the application to the home office of the company at Rome, but it was rejected, and he was notified; that a letter was written by one of the agents in the Atlanta office, directed to the applicant, which bore date August 28, but was not received by his wife until September 5, after his death. In this it was stated that the application had been declined, and that the amount he had paid to the assistant superintendent would be returned to him by the assistant. It was tendered to plaintiff later, but she declined to receive it. There was no evidence to show that the money was forwarded to the company, or received or held by it. The only intimation to that effect is to be found in the evidence of one Bradley, who stated that he was acting superintendent of defendant for the Atlanta district, and testified that, when he received the notice of the rejection of the application, he wrote the letter of August 28, and it was mailed the same day, in the afternoon; that "at that time I made the remittance from this office to the home office; I did not receive any amount of money from Mr. Akin [the assistant superintendent to whom it was paid by the wife of the insured], or remit to the company any amount of money; it has not been remitted from this office." One clause of this statement taken alone might indicate that he remitted the money to the home office after the application had been rejected and after he had notified the insured of that fact by mail; but taken together the witness can hardly mean by his testimony that such was the fact. There was evidence that the secretary of the company offered to pay to the brother of the wife of the insured the amount of the premium, but this did not show that the company had received that amount from the local agent. It appeared to be rather in the nature of an offer of compromise. There was also no evidence that, after a revival of the policy, the premiums were then kept up.

4. The presiding judge charged: "To make the attempt to revive effectual, it must be shown to you that evidence of the sound health of the insured was presented to the company, and if presented, it ought to have been strong enough to have been satisfactory to the company, or sufficient to have been satisfactory to a reasonable man." The policy declared that if any premium should not be paid, "this policy shall be void." In providing a method of obtaining a revival, one requirement was "the presentation of evidence satisfactory to the company of the sound health of the insured." It did not say, "sufficient to satisfy a reasonable man," as the judge charged. Where the company reserved to itself the question of satisfaction, it would be changing the contract to hold that what would satisfy a reasonable man would answer the terms of the policy.

Doubtless the company must act honestly and in good faith in passing upon the question. But if it does so, the test applied by the trial court was erroneous. *Mackenzie* v. *Minis,* 132 *Ga.* 323 (1, 2), 327, 329 (63 S. E. 900, 16 Ann. Cas. 723); *Stewart* v. *Exum,* 132 *Ga.* 422 (3), 425 (64 S. E. 471); Ronald *v.* Mutual Reserve Fund Life Association, 132 N. Y. 378, 382, 384; 2 Joyce, Ins. § 1276. A company may waive this requirement or estop itself by its conduct from setting up non-compliance with it. But that is a different thing from defining what is a compliance. In this case there was evidence that the policy had lapsed for some six months when the effort was made to revive it, that the insured had been in bad health, that he died in three or four weeks after the application for reinstatement, and that he had been rejected as a risk by another company to which he applied for insurance.

*Judgment reversed. All the Justices concur.*