## TIMMONS v. BOSTWICK.

1. Timmons executed and delivered the following paper: ":I have this day sold to W. E. Bostwick 20 b/c. at 10½ cents round f. o. b. cars Arlington, Ga. Delivery to be made as follows: 5 Sept., 10 in Oct., and 5 in Nov., to be in good and merchantable condition." This

was dated "7-2-09," and signed by Timmons. Bostwick wrote to Timmons a paper in the form of a letter, bearing the same date, and containing the following: "In consideration of one dollar in hand paid, I beg to confirm having sold for your account twenty (20) bales of cotton at 10½ cts., ten and one half cents, per pound round f. o. b. cars Arlington. The cotton to weigh ten thousand pounds, 10,000 #, ten per cent. more or ten per cent. less. Delivery to be made as follows: 5 bales in September, 10 in October, and 5 in November, the year 1909." This was signed by Bostwick, and in the left-hand corner appeared the word "Accepted," followed by the signature of Timmons. On November 12 thereafter, Bostwick wrote a letter to Timmons containing the following: "I beg to notify you that I am now ready to receive and pay for the 20 b/c. at 10½ cents per pound round sold to me on July 2nd, 1909, f. o. b. cars Arlington, Ga. I respectfully ask that you deliver same between now and the 30th day of November." *Held:* (*a*) It not appearing that there was any consideration for the first paper set out above, at the time of its execution, it operated only as an offer to sell on the terms specified, and could be withdrawn before acceptance. (*b*) The second paper above stated did not purport to be an acceptance of an offer to sell, but contained a statement of an entirely different kind of contract, namely, that the person executing the second paper confirmed having sold, for the account of the other party, certain cotton as therein stated. Instead of this paper constituting an acceptance of the former offer, it was itself accepted by the other party. (*c*) The third paper above set out did not purport to be an acceptance of the terms of the original offer, but referred to cotton previously sold to the alleged purchaser. It was dated after the time for delivery of the larger part of the cotton would have passed, had acceptance been made in accordance with the terms of the original offer, at a time when the price of cotton had advanced considerably, and when it may be inferred from the entire petition as amended that the person making the original offer had withdrawn from or repudiated it. (*d*) The instrument involved in *Terry* v. *International Cotton Co.,* 136 *Ga.* 187 (70 S. E. 1100), was different from that now under consideration.

2. The first two writings above set out do not on their face refer to each other or show a connection between them; nor could it be shown by parol that the second paper was intended as an acceptance of the offer of sale contained in the first.

(*a*) The allegations of the petition did not show a contract of bargain and sale between the parties, made by the first two papers, sufficient to meet the requirements of the statute of frauds.

3. Under the facts stated in the first headnote above, an allegation that on September 4, 1909, the plaintiff (Bostwick) offered to accept and receive twenty bales of cotton, and to pay for them at the rate of ten and a half cents per pound, and also demanded five bales of cotton which he alleged that the defendant (Timmons) had sold to him, to be delivered during the month of September, was not sufficient to show an acceptance of the offer in accordance with its terms. There was no offer to deliver the entire twenty bales of cotton, or any part thereof on September 4, and the plaintiff had no right to demand a delivery at that time.

(*a*) The same is true of the further allegation that on October 2, 1909, the plaintiff offered to accept and receive from the defendant the entire twenty bales of cotton in controversy, at the price stated, and that he demanded of the defendant ten bales, which he alleged the defendant had sold to him for delivery in October. If the offer had been accepted in accordance with its terms, the defendant would have had the entire month of September in which to deliver five bales of cotton, the month of October in which to deliver ten bales, and the month of November in which to deliver five bales.

(*b*) The petition as amended was demurrable.

MAY 20, 1914.

Complaint.　Before　Judge　Worrill.　Early　superior　court. January 27, 1913.

W. E. Bostwick brought suit against S. S. Timmons, to recover for an alleged breach of a contract by the defendant to sell and deliver to the plaintiff twenty bales of cotton. The contract was alleged to have been made by means of the following writings: "I have this day sold to W. E. Bostwick 20 b/c. at 10½ cents round f. o. b. cars Arlington, Ga. Delivery to be made as follows: 5 Sept., 10 in Oct., and 5 in Nov., to be in good and merchantable condition. [Signed] S. S. Timmons. 7-2-09." "Arlington, Ga., July 2, 1909. Mr. S. S. Timmons, Arlington, Ga. Dear Sir:—In consideration of one dollar in hand paid, I beg to confirm having sold for your account twenty (20) bales of cotton at 10½ cts., ten and one half cents per pound round f. o. b. cars Arlington. The cotton to weigh ten thousand pounds, 10,000 #, ten per cent. more or ten per cent. less. Delivery to be made as follows: 5 bales in September, 10 in October, and 5 in November, the year 1909. Very truly yours, W. E. Bostwick. Accepted. S. S. Timmons." "Arlington, Ga., Nov. 12, 1909. S. S. Timmons, Esq., Arlington, Ga. Dear Sir:—I beg to notify you that I am now ready to receive and pay for the 20 b/c. at 10½ cents per pound round sold to me on July 2nd, 1909, f. o. b. cars Arlington, Ga. I respectfully ask that you deliver same between now and the 30th day of November. With kind regards, I am very truly yours, [signed] W. E. Bostwick." On September 30 the price of cotton had advanced to 12½ cents per pound, and on October 31 it was worth 14¼ cents per pound.

By amendment the plaintiff added substantially the following allegations: On September 4, 1909, the plaintiff offered to accept and receive from S. S. Timmons the said 20 bales of cotton which

Timmons had sold to him, as alleged in the original petition, and offered to pay Timmons 10½ cents per pound round therefor. On September 4, 1909, the plaintiff demanded of Timmons the five bales of cotton which the latter had sold to him and had agreed to deliver to him f. o. b. cars at Arlington, Ga., during the month of September, 1909; and the plaintiff offered to receive the same and pay Timmons 10½ cents per pound round therefor. On October 2, 1909, the plaintiff again offered to accept and receive from Timmons the twenty bales of cotton which the latter had sold to him, and offered to pay Timmons 10½ cents per pound round therefor. On October 2, the plaintiff demanded of Timmons the ten bales of cotton which the latter had sold to him and had agreed to deliver during the month of October, and the plaintiff offered to receive the same and pay 10½ cents per pound round therefor.

The defendant demurred to the petition, on the grounds, among others, that it set forth no cause of action, that the contract set out was unilateral and not enforceable against the defendant, and because it appeared on the face of the petition and the acceptance thereto attached that the contract sought to be enforced was not evidenced in writing, as required by the statute of frauds. The demurrer was overruled. A verdict was rendered in favor of the plaintiff. A motion for a new trial was overruled, and the defendant excepted. He also assigned error on the overruling of the demurrer.

H. M. Calhoun and L. M. Rambo, for plaintiff in error.

B. W. Fortson, contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The court erred in overruling the demurrer to the petition. As originally filed, it relied upon three written papers as constituting a contract between the plaintiff and the defendant, by which the latter agreed to sell and the former to buy twenty bales of cotton deliverable at certain times. We do not think they constituted such a contract. The first paper contained a statement by the defendant that he had sold to the plaintiff twenty bales of cotton at ten and a half cents per pound, to be delivered as stated. This paper was signed alone by the defendant. No consideration for it is shown. It therefore amounted to nothing more than an offer by the defendant, which could be withdrawn prior to acceptance within a reasonable time. The second paper is relied on as

constituting an acceptance by the plaintiff of the offer thus made by the defendant. It did not purport to make any such acceptance; nor did it purport to refer to any purchase by the plaintiff from the defendant. On the contrary it stated, that, "In consideration of one dollar in hand paid, I beg to confirm having sold for your account twenty (20) bales of cotton," etc. This was directed, like a letter, to the defendant, and ended with the words, "very truly yours," followed by the signature of the plaintiff. Not the most liberal construction could make this statement mean that the plaintiff accepted the antecedent offer of the defendant to sell cotton to him at a certain price, or that the plaintiff bound himself by such a statement to become the purchaser. It is true that in the left-hand corner of the paper appears the word "Accepted," followed by the signature of the defendant. But what did he accept? Certainly not his own prior offer to sell cotton to the plaintiff. It could only mean that he accepted a sale which the plaintiff represented that he had made of twenty bales of cotton on account of the defendant, deliverable as stated in that paper. The second paper is a somewhat unique instrument. Why the plaintiff should recite the receipt of one dollar as a consideration for confirming having sold twenty bales of cotton for the account of the defendant is not easily to be perceived. This paper makes no reference whatever to the former one, does not purport to accept any proposition or agreement made in it, or contain the slightest intimation that the plaintiff agreed to buy cotton from the defendant.

The third paper relied on by the plaintiff was a letter from him to the defendant, dated November 12, in which the plaintiff stated: "I beg to notify you that I am now ready to receive and pay for the 20 b/c. at 10½ cents per pound round sold to me on July 2nd, 1909, f. o. b. cars Arlington, Ga. I respectfully ask that you deliver same between now and the 30th day of November." This letter does not purport to be an acceptance of the proposition originally made by the defendant, and could not have been an acceptance of such proposition in accordance with its terms. The defendant's agreement was to sell cotton, to be delivered five bales in September, ten in October, and five in November. The time for the delivery of the first two installments was past, and only five bales would have remained to be delivered, if the contract as originally proposed had been accepted and carried out. The peti-

tion alleges that on September 30 the price of cotton was 12½ cents per pound, and on October 30 it was 14½ cents per pound. The plaintiff could hardly expect to fail to close the contract until after the time for the delivery of most of the cotton had passed, in accordance with the proposal, and after the price had advanced 3¾ cents per pound, and after the defendant (as indicated by the petition as amended) had withdrawn from or repudiated the agreement, and then close the contract by such a letter. Moreover, the language employed is not that of a direct acceptance, but of a notification that he is ready to receive at that time cotton purporting to have been previously sold to him. The decision in *Terry* v. *International Cotton Co.*, 136 *Ga.* 187 (70 S. E. 1100), does not apply to the present case. While the paper there involved began with the same formula as to confirming "having sold for your account" certain cotton on specified terms, it further stated: "This cotton is to be delivered by you, and accepted by us in any warehouse in Shellman, Ga., during the month of October, 1909." It was signed by the person claiming to be the purchaser, followed by the word "Accepted," and the signature of the person claimed to be the seller. It was held that while the expression, "sold for your account," standing alone, might not indicate a contract of sale by one of the parties to the other, yet that, taken as a whole, the writing had that effect. The paper claimed in the present case to have operated as an acceptance by the plaintiff of the proposition of sale, or as a contract of sale, contained no such words as those quoted above, showing an agreement by one of the parties to deliver cotton to the other, and by the latter to accept it. It contained only the words which were declared, in the case cited, not to indicate a contract of sale by one of the parties to the other.

We think it is clear that these papers do not on their face show a contract of the character claimed by the plaintiff. Taking the pleadings most strongly against the pleader, the added statement of the plaintiff's readiness and willingness to receive the cotton and offer to pay for it does not set out a distinct acceptance aside from the allegations considered, or, if so, show that it occurred before the defendant withdrew his offer.

2. The demurrer raised the point that the contract was one which the statute of frauds required to be in writing (Civil Code (1910), § 3222, par. 7), that the writings on their face did not

show a contract of sale from the defendant to the plaintiff, and that this could not be cured by parol testimony, or by allegations dependent on parol testimony for support. In *Smith* v. *Jones,* 66 *Ga.* 338 (42 Am. R. 72), it was held that contracts within the statute of frauds must be in writing, signed by the party to be charged, or some one authorized by him to sign, and must contain a statement of the agreement sought to be enforced. It was further held that a letter referring generally to some contract as existing, without stating any of its terms or otherwise identifying it, was not sufficient to bind the writer to a contract the terms of which must be supplied by parol. In the opinion Jackson, C. J., said (p. 342) : "There is therefore nothing in writing signed by her which complies with the statute so as to bind her; and taking the two papers together, unless the parol testimony be let in to connect them and show that the letter referred to the receipt, there is nothing signed by her to bind her to the contract set out in the receipt. If the parol testimony could show that, away would go the statute, and it had as well be admitted to show the whole contract. And such we understand to be the full current of authority, whether cited by the one or the other side here. Browne on Stat. of Frauds, § 344 et seq., and cases cited. The rule should not be relaxed now when the floodgates are open wide as to the competency of witnesses, and the only breakwater left is the requisition to put this class of contract, and others of similar character, in writing." In *North & Co.* v. *Mendel,* 73 *Ga.* 400 (54 Am. R. 879), Hall, J., said (p. 404) : "If, however, it be necessary to adduce parol evidence, in order to connect a signed paper with others unsigned, by reason of the absence of any internal evidence in the signed paper to show a reference to, or connection with, the unsigned papers, then the several papers taken together do not constitute a memorandum in writing of the bargain, so as to satisfy the statute." While it was intimated that separate papers might contain internal evidence connecting them, without an express reference of one to the other, the statement of Jackson, C. J., above quoted, as to not relaxing the rule, was approved. See also *Lester* v. *Heidt,* 86 *Ga.* 226 (12 S. E. 214, 10 L. R. A. 108) ; *Douglass* v. *Bunn,* 110 *Ga.* 159 (35 S. E. 339) ; *Borum* v. *Swift & Co.,* 125 *Ga.* 198 (53 S. E. 608) ; *Oglesby Grocery Co.* v. *Williams Mfg. Co.,* 112 *Ga.* 359 (37 S. E. 372) ; Halsell *v.* Renfrow, 14 Okla. 674 (78 Pac. 118, 2 Ann. Cas. 286, and note on page 293).

We need not discuss to what extent a reference to the subject-matter in hand, or to other papers or their contents, may be sufficient to show a connection between several papers which are claimed to constitute one contract; nor the rule that ambiguities may be explained by parol. Perhaps the most liberal view on that subject will be found in Beckwith *v.* Talbot, 95 U. S. 289 (24 L. ed. 496); White *v.* Breen, 106 Ala. 159 (19 So. 59, 32 L. R. A. 127). While these and similar cases announced somewhat broadly the rule of showing surrounding circumstances in connection with a contract contained in several papers, yet none of them which have come to our attention hold that a paper signed by the two contracting parties, showing no connection with any other paper, and purporting on its face to declare one kind of contract, can be so connected by parol with another paper, previously signed by only one of the parties, as to engraft upon the second paper a contract entirely different from that which it expresses. An examination of the cases cited and those similar to them will show that it was considered that, under their peculiar facts, there was something sufficient to show a connection between the various papers involved. The third paper in the present case has already been discussed.

3. By amendment the plaintiff sought to cure the difficulties above indicated. He alleged that on September 4, 1909, he offered to accept and receive the twenty bales of cotton, and to pay for them at the rate of 10½ cents per pound, and also demanded five bales of cotton which he alleged that the defendant had sold to him, to be delivered during the month of September. The difficulty about these allegations, as an effort to complete the former imperfect contract, is that, according to the terms of the original offer, if accepted, the plaintiff had no right to call for twenty bales of cotton on September 4, nor even to call for five bales. The offer contemplated the delivery of five bales in the month of September. Had it been accepted, the defendant would have had that entire month to make the delivery; and the plaintiff can hardly claim to have made a valid acceptance of a proposition by making a demand or offer which was not in accordance with it.

Again, the plaintiff alleged in his amendment, that on October 2, 1909, he again offered to accept and receive from the defendant the twenty bales of cotton, which he alleged that the defendant had sold to him, as set out in the original petition, offering to pay

for the cotton at the rate of 10½ cents per pound; and also that he demanded of the defendant the ten bales·of cotton, which he alleged that the defendant had sold to him for delivery in October. What has been said above applies equally to these allegations. Indeed, the plaintiff does not distinctly set them out as being acceptances of the contract, but rather as offers or demands in compliance with what he claims to have been the contract previously made. The foregoing discussion renders it unnecessary to consider the question of a parol acceptance of a written proposition.

The petition as amended did not set out a cause of action against the defendant or state a contract which was enforceable under the statute of frauds. Accordingly, it should have been dismissed on demurrer.          *Judgment reversed. All the Justices concur.*