16260.   GAINOUS *v.* GEORGIA CASUALTY COMPANY *et al.*

Where a policy of industrial insurance contained the provision: "No condition or provision of this·policy shall be waived or altered except endorsement attached hereto signed by the President, a Vice President, Secretary, or Assistant Secretary of the Company, or by a Registrar of the Company when specially authorized so to do by a printed endorse-ment attached hereto; nor shall notice to any agent, nor shall knowl-edge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract," a general agent of the insurer had no authority to enter into a subsequent agreement amend-ing the terms of the· policy so that it would provide insurance and protection to others not originally included within its provisions.

DECIDED NOVEMBER 18, 1925.

Appeal; from Decatur superior court—Judge Custer.   January 7, 1925.

Mrs. Leona Gainous was awarded compensation under the work-men's compensation law by the industrial commission for the death of her husband, James H. Gainous.   She excepts to a judgment of the superior court of Decatur county sustaining an appeal by the insurance carrier and setting aside the award.   The findings of the industrial commission were stated as follows:   "August 30, 1923, James Harmon Gainous was killed while loading logs on a truck.   At the time of the accident he was receiving $11 a week. The accident arose out of and in course of his employment.   These facts were agreed to at a hearing by attorneys for claimant and the insurance carrier.   Other facts brought out by evidence are that Mr. Gainous was employed by Mr. R. E. Wells, who was cutting and delivering timber for the Lovelace-Young Lumber Company, of Faceville, Decatur county, Georgia.   Mr. Wells had a contract with the Lovelace-Young Lumber Company to cut and deliver timber owned by the company, for a certain amount per thousand feet. He employed or discharged his own help, and got the money to pay wages from the Lovelace-Young Lumber Company, the amount being charged to his personal account.   The Lovelace-Young Lum-ber Company carried its compensation risk with the Georgia Casualty Company.   Mr. Wells was asked if he cared to insure his risk and declined.   The agent of the insurance company told Mr. Lovelace that if he would collect the necessary premium on the wages of the men employed by Mr. Wells, they would be protected under the policy of the Lovelace-Young Lumber Company.   Mr. Gainous and Mr. Wells were of the belief that he was protected.

Mr. Lovelace was to collect the premium and make returns to the insurance carrier about every three months, and settlements would be made. Mr. Lovelace did not remember whether he made any remittance for Mr. Wells to the insurance carrier before the death of Mr. Gainous. It was his belief that he was to collect on wages of the employees of Mr. Wells, and they would be protected under the policy of the lumber company. Mrs. Gainous is claiming dependency and compensation for herself and infant child, Grady. There is no denial in this case of the dependency of Mrs. Gainous and her son, Grady. The contest comes over whether or not the employees working with Mr. Wells were covered by the compensation insurance policy carried by the Lovelace-Young Lumber Company. The facts are, that Mr. Chandler, an agent of the Georgia Casualty Company, made a proposition to take all the people connected with the Lovelace-Young Lumber Company under the policy of the company if they desired to come under and would pay the necessary premium. Mr. Wells declined to come under and insure his risks. Mr. Chandler then told Mr. Lovelace that if he would at any time collect the premium on the wages of the men, they would be protected under his policy. Later Mr. Wells began the regular payment of these premiums, which the Lovelace-Young Lumber Company collected and still has in its possession. Some time after the payments were begun Mr. Gainous was killed while in the discharge of his duty, and the Georgia Casualty Company refused to pay compensation to the dependents, claiming that the employees of Mr. Wells were not covered under the policy written the Lovelace-Young Lumber Company."

The policy of insurance was signed by Chandler as general agent of the insurance carrier, and contained, among others, the following provision: "No condition or provision of this policy shall be waived or altered except endorsement attached hereto signed by the president, a vice-president, secretary, or assistant secretary of the company, or by a registrar of the company when specially authorized so to do by a printed endorsement attached hereto. Nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract." As shown by the commission's findings, the policy as written insured only Lovelace-Young Lumber Company and its employees. The record shows that it was about

a year after the making of the contract that the agent agreed with Mr. Lovelace that the policy would be considered as extending to Wells and his employees if Wells would pay the necessary premiums on the wages of his employees. It does not appear that Chandler occupied any relation to the company other than that of general agent, nor was any endorsement attached to the policy embodying the new agreement. It further appears that Wells regularly had in his service less than ten employees, and the record is silent as to whether the deceased employee had ever elected to be bound by the compensation act.

*Drake & Kirbo,* for plaintiff.

*Brock, Sparks & Russell, Harrell & Custer,* for defendants.

BELL, J. (After stating the foregoing facts.) There are perhaps several reasons why the judgment sustaining the appeal and setting aside the award should be affirmed. Whether there be several or not, we are satisfied there is one; and that is enough. The policy was originally for the benefit only of Lovelace-Young Lumber Company and its employees. By the express provisions thereof Chandler had no authority to bind his principal by the subsequent agreement with Lovelace and Wells, to the effect that the policy would be enlarged to include Wells and his employees if Lovelace should collect from Wells the necessary premiums upon the wages of Wells' employees. This could have been done, if at all, only in the manner pointed out in the clause of the policy quoted above. All parties who might be concerned had notice of the limitations upon Chandler's authority as thus contained in the policy; and a principal may qualify the authority even of a general agent, and will not be bound by the acts of such agent beyond the scope of his authority where the persons dealing with him have notice of the limitations thereon. *Hutson* v. *Prudential Ins. Co.,* 122 *Ga.* 847 (2) (50 S. E. 1000) ; *Vardeman* v. *Penn Mutual Life Ins. Co.,* 125 *Ga.* 117 (3) (54 S. E. 66, 5 Ann. Cas 221) ; *Bank of Commerce* v. *New York Life Ins. Co.,* 125 *Ga.* 552 (3) (54 S. E. 643) ; *Rome Industrial Ins. Co.* v. *Eidson,* 138 *Ga.* 592 (1, 2) (75 S. E. 657) ; *Reese* v. *Fidelity Mutual Life Association,* 111 *Ga.* 482, 490 (36 S. E. 637). The limitation upon the agent's authority is, if possible, the more certainly binding in the instant case, because the transaction which the claimant relied on was subsequent to the execution of the policy. *Johnson* v. *Ætna Ins. Co.,*

123 *Ga.* 404 (2) (51 S. E. 339, 107 Am. St. Rep. 92). There is no evidence that any of the premiums paid by Wells were ever received by the insurance carrier, nor other evidence to show a ratification of Chandler's unauthorized agreement. The conclusion, therefore, is inevitable that the policy was never effectually amended so as to provide insurance and protection to Wells and his employees. It follows from what has been said that the judge of the superior court did not err in sustaining the appeal.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*