49752. TRANS-AM BUILDERS, INC. v. WOODS MILL, LTD. et al.

STOLZ, Judge.

The litigation before us arose out of the construction

of an apartment complex involving Trans-Am Builders, Inc., as general contractor (appellant) and Woods Mill, Ltd., a limited partnership (appellee) with a number of individuals as limited partners and The Baier Corporation as the general partner. The limited partnership was duly organized and properly registered under the provisions of the Uniform Limited Partnership Act (Code Ann. § 75-401 et seq.; Ga. L. 1952, p. 375 et seq.).

During the construction of the project, financial difficulties arose, resulting in appellant's either abandoning or being removed from the project. Suits and countersuits were filed. However, there is but one issue before us, that is, have the limited partners conducted themselves in such a manner as to "take part in the control of the business" and thus become liable as a general partner? Code Ann. § 75-408 (Ga. L. 1952, pp. 375, 378). The issue appears to be one of first impression in Georgia.

Code Ann. § 75-411 (Ga. L. 1952, pp. 375, 379) provides as follows: "(1) A limited partner shall have the same rights as a general partner to (a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them. (b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable. (c) Have dissolution and winding up by decree of court. (2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in sections 75-416 and 75-417."

The evidence before us reveals that the limited partners (with one exception) held at least two meetings after it became apparent that the project was in financial difficulty. At these meetings the situation was presented by a representative of the general partner, discussions were participated in, and additional money was raised to meet financial obligations. At least one of the limited partners went to the project and went over it with the appellant's superintendent, and "obnoxiously" com-

plained and objected to the way the work was being conducted, but there is nothing to indicate that he gave any directions which may have been followed by the plaintiff's superintendent. At least one of the limited partners attended no meetings, participated in no discussions, nor visited the project site. We have mentioned the actions of the limited partners as a group to show the total range of activity involved. Obviously, the conduct of each limited partner is binding only on himself. The appellant contends that these actions violated Code Ann. § 75-411, supra, and that the limited partners thus became general partners. The trial judge held otherwise and sustained the limited partners' motion for summary judgment, from which judgment the plaintiff appeals.

1. The appellant urges that the Uniform Limited Partnership Act is in derogation of the common law and thus should be strictly construed. Code Ann. § 75-428 (Ga. L. 1952, pp. 375, 388) specifically provides that such rule shall have no application to the Act and that it shall be interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it. For an interesting discussion of the history of the limited partnership, see Rathke v. Griffith, 218 P2d 757, 758 (Wash. 1950).

2. The trial judge, in reaching his decision, cited the case of Weil v. Diversified Properties, 319 FSupp. 778 (D. C. 1970), which involved a limited partnership formed to operate an apartment property. The general partner exclusively operated the property on behalf of the partnership until financial difficulties arose. Then the limited partners had meetings and selected two new employees to take over the management of the partnership business from the general partner. Ultimately, the general partner brought suit seeking to assess partnership liabilities on the limited partners on the theory that they had taken control of the enterprise within the meaning of the Uniform Limited Partnership Act as enacted in the District of Columbia. In holding that the limited partners had not forfeited their limited liability by virtue of the activities, the court commented: "Thus it is apparent that the partners contemplated the

general partner would receive a substantial salary and have the day-to-day management of the properties. For reasons already suggested, this expectation was altered by events which resulted in the general partner foregoing his salary and turning over immediate day-to-day responsibility to [the new employees], who were employed on a commission basis. After May 1, 1969, the partnership operation became a matter of salvaging what could be salvaged in the enterprise as it then existed. . . Weil believes he should have had exclusive say as to how and what bills were to be paid with any money available beyond immediate operating needs, but under the prevailing conditions this clearly was not a normal day-to-day business question; it involved the very ability of the enterprise to survive. . . It is well established that just because a man is a limited partner in an enterprise he is not by reason of that status precluded from continuing to have an interest in the affairs of the partnership, from giving advice and suggestions to the general partner or his nominees, and from interesting himself in specific aspects of the business. Such casual advice as limited partners may have given to [the employees] can hardly be said to be interference in day-to-day management. Certainly common sense dictates that in times of severe financial crisis all partners in such an enterprise, limited or general, will become actively interested in any effort to keep the enterprise afloat and many abnormal problems will arise that are not under any stretch of the imagination mere day-to-day matters of managing the partnership business. This is all that occurred in this instance." Weil, supra, p. 782. See also Rathke v. Griffith, 218 P2d 757, supra; Grainger v. Antoyan, 48 Cal. 2d 805 (313 P2d 848) (1957); Silvola v. Rowlett, 129 Colo. 522 (272 P2d 287) (1954); and Plasteel Products Corp. v. Helman, 271 F2d 354 (1st Cir. 1959) as illustrative of the construction other jurisdictions have given this issue. And see 6 Uniform Laws Anno., p. 564, as cited with approval in Vulcan Furniture Mfg. Corp. v. Vaughn, 168 S2d 760 (Fla. 1964); 82 Harvard L. Rev., pp. 1471, 1479; 56 Michigan L. Rev., pp. 285, 286-287, n. 13; U. Pa. L. Rev., pp. 715, 723.

Each of the factual situations presented in the cases

cited involves much greater and more direct activity and participation in the respective enterprise than is involved here. It would be unreasonable to hold that a limited partner may not advise with the general partner and visit the partnership business, particularly when the project is confronted with a severe financial crisis.

*Judgment affirmed. Deen, P. J., and Marshall, J., concur.*

ARGUED SEPTEMBER 30, 1974 — DECIDED NOVEMBER 26, 1974.

*Moreton Rolleston, Jr.,* for appellant.
*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Robert W. Beynart,* for appellees.