52291. STONE MOUNTAIN PROPERTIES, LTD. et al. v. HELMER.
52292. STONE MOUNTAIN PROPERTIES, LTD. et al. v. MITCHELL.

WEBB, Judge.

On December 23, 1971, Bobby Mitchell entered into a contract to buy certain real estate from Stone Mountain Properties, Ltd., a limited partnership. Mitchell's promise to purchase the property was conditioned upon Special Stipulation 6, which provided as follows: "This contract is made contingent upon Purchaser's being able to obtain approval from the Seaboard Airline Railroad to run a spur rail line into the property *at a location satisfactory to the Purchaser.* The Purchaser shall have ninety (90) days from the date hereof to obtain land planning and approval of the rail spur location. In the event that the approval for the rail spur line has not been obtained, then at the option of Seller this contract shall become null and void and no further obligations will exist hereunder. In the event these conditions are obtained by Purchaser, then the closing of this purchase and sale shall be on or before sixty (60) days following notification to Seller by Purchaser that these conditions have been met, but in any event, shall not exceed one hundred fifty (150) days from the date hereof." (Emphasis supplied.)

During the first week in March, some seventy days after the date of the contract, the partnership learned of another prospective purchaser for the property. No notification as to the happening of the rail spur contingency had been received from Mitchell, and the partnership ascertained from the railroad that he had filed no formal application for the spur line. The general partner became concerned that approval could not be obtained at that late date, and worried that the partnership would be unable to sell the land if it were not sold to the other interested party, who was buying all the surrounding land on condition that the transactions be accomplished immediately. The partnership obtained legal advice that the contingency in Special Stipulation 6 deprived the contract of mutuality and rendered it unenforceable; and faced with a choice between an immediate, certain sale with no contingencies and a contract that had not become binding, it chose to convey the property to the other purchaser on March 6.

However, the partnership did not inform Mitchell or his real estate agent of the sale; and on March 15, after the agent had picked up from consulting engineers a plat of the spur line which the agent understood would be acceptable to the railroad, Mitchell declared himself well satisfied with the location and signed the following letter prepared and mailed by one of his agents:

"Paragraph 6, Exhibit C (copy attached) is contingent upon the purchaser being able to obtain approval from the Seaboard Airline Railroad to run a spur rail line into the property at a location satisfactory to the purchaser.

"This is to notify you the above condition and all other conditions have been satisfied and we are proceeding to consummate the contract on or before the time set forth."

Upon receiving this letter, the general partner mailed the following response to the purchaser's agent:

"Stone Mountain Properties, Ltd. has determined to declare and does hereby declare the purported agreement . . . null and void. You are hereby requested to return promptly to Bobby D. Mitchell the earnest money held by you."

After receiving this response the agent telephoned the general partner and was told the sale to Mitchell would not go through, and the agent then informed Mitchell. Subsequently each brought suit for damages against the partnership and its general and limited partners individually.[1] The trial court denied summary judgment to defendants, granted summary judgment to Mitchell's agent and entered final judgment in his favor in the amount of the commission as stated in the contract, and entered an order which the parties have treated as a grant of partial summary judgment to Mitchell on the question of liability. Defendants appeal.

1. The condition in Special Stipulation 6, making the purchaser's obligation to purchase "contingent upon Purchaser's being able to obtain approval from the Seaboard Airline Railroad to run a spur rail line into the property at a location satisfactory to the Purchaser," is not a condition subsequent but a condition precedent, even though the contract provides that upon failure of the condition "then at the option of Seller this contract shall become null and void and no further obligations will exist hereunder." *Stribling v. Ailion,* 223 Ga. 662 (157 SE2d 427). Accord, *Clayton McLendon, Inc. v. McCarthy,* 125 Ga. App. 76 (186 SE2d 452); *Alodex Corp. v. Brawner,* 134 Ga. App. 630 (215 SE2d 527).

It is well settled that contracts conditioned upon discretionary contingencies lack mutuality. As stated in *Teague v. Adair Realty &c. Co.,* 92 Ga. App. 463, 467 (88 SE2d 795): "If, in a contract for the sale of real estate, payment of the purchase price is made contingent upon an event which may or may not happen at the pleasure of the buyer, the contract lacks mutuality, and until that contingency has occurred, there is no obligation on the part of the purchaser to purchase or the seller to sell. *F. & C. Investment Co. v. Jones,* 210 Ga. 635 (81 SE2d 828); *Wehunt v. Pritchett,* 208 Ga. 441 (67 SE2d 233)."

Thus where a contract may be terminated by one of

[1]The general partner's brokerage business, which was to have a share in the commission, was joined as a "necessary party."

the parties should it *"become dissatisfied* with the management and operation of the said bank," the contract lacks mutuality. *Bankers Trust &c. Co. v. Farmers & Merchants Bank,* 163 Ga. 352 (3) (136 SE 143), conformed to 36 Ga. App. 317. (Emphasis supplied.) Accord, *Markan Development Co. v. Rolyat, Inc.,* 93 Ga. App. 560 (92 SE2d 214) ("financing which was *in its opinion* adequate to finance the construction of certain improvements"); *Clayton McLendon, Inc. v. McCarthy,* 125 Ga. App. 76, 77, supra ("contingent upon subject property being served by . . . sewers . . . at a cost to purchaser which *purchaser considers to be reasonable and economically feasible*"); *Alodex Corp. v. Brawner,* 134 Ga. App. 630, supra (*"suitable* financing"). (Emphasis supplied.)

The condition here providing for railroad approval for a location "satisfactory to the Purchaser" deprives the contract of mutuality because the purchaser is "the sole judge" of his satisfaction (*Stribling v. Ailion,* 223 Ga. 662, 663 (1), supra; *Lummus Cotton Gin Co. v. Baugh,* 29 Ga. App. 498 (1) (116 SE 51)), regardless of "whether there were reasonable and sufficient grounds for such dissatisfaction or not." *Collins v. Collins,* 157 Ga. 85, 90 (121 SE 218). "Where the fancy, taste, sensibility, or judgment of the promisor is involved, there is practical unanimity that if one agrees to accept and pay if he is satisfied with a thing, he can not be compelled to do so on proof that other people are satisfied with it, or that he ought to be." *Mackenzie v. Minis,* 132 Ga. 323, 327 (63 SE 900). Accord, *Stewart & Co. v. Exum,* 132 Ga. 422, 425 (3) (64 SE 471); *Rome Industrial Ins. Co. v. Eidson,* 138 Ga. 592, 596 (4) (75 SE 657); *Atlanta Realty Co. v. Campion,* 94 Ga. App. 136 (93 SE2d 781); *Creative Service, Inc. v. Spears Const. Co.,* 130 Ga. App. 145 (4) (202 SE2d 581).[2]

---

[2]Compare *DeKalb County v. Ga. Paperstock Co.,* 226 Ga. 369 (5) (174 SE2d 884), where the plaintiff agreed to buy "all of the waste paper corrugated boxes delivered in satisfactory condition for the use of the [plaintiff]." The quoted language is descriptive of the subject matter of the contract and is not, as here, a condition precedent to obligation to perform. Since plaintiff in that case had an ongoing business of processing waste corrugated boxes,

Nevertheless, "a promise may be nudum pactum when made because the promisee is not bound, but it becomes binding when he subsequently furnishes the consideration contemplated by doing what he was expected to do." *Hall v. Wingate,* 159 Ga. 630 (1c) (126 SE 796). Following this reasoning it has been held that a promise to sell realty becomes binding when the purchaser, although not required to do so, performs the condition precedent to his obligation to buy. *Bolton v. Barber,* 233 Ga. 646 (212 SE2d 766); *Moore v. Buiso,* 235 Ga. 730, 731 (1) (221 SE2d 414).

In this case the condition would not be fulfilled until Mitchell was satisfied with the approved location. "Where one contracting party agrees to perform services 'to the satisfaction of' or 'satisfactory to' the other party, compliance with the contract is not shown unless it appears that the thing done or the article furnished does in fact satisfy the other party." *Atlanta Realty Co. v. Campion,* 94 Ga. App. 136 (2), supra. It is not sufficient "that other people are satisfied with it, or that he ought to be" (*MacKenzie v. Minis,* 132 Ga. 323, 327, supra) — "[w]here the company reserved to itself the question of satisfaction, it would be changing the contract to hold that what would satisfy a reasonable man would answer the terms of the [contract]." *Rome Industrial Ins. Co. v. Eidson,* 138 Ga. 592, 596, supra.

Once Mitchell was satisfied with the approved location, however, a binding contract could come into existence (*Sears, Roebuck & Co. v. Kitchens,* 31 Ga. App. 574 (1) (121 SE 583); *Fried v. Portis Bros. Hat Co.,* 41 Ga. App. 30 (1) (152 SE 151); *College Park Builders, Inc. v. Uplands Const. Corp.,* 106 Ga. App. 644, 645 (1) (127 SE2d 812)), provided Mitchell satisfied the contractual requirement of "notification to Seller by Purchaser that

---

what was a "satisfactory condition for use of the company" could be determined by objective standards. Here, however, the location must be "satisfactory to the Purchaser," thus encompassing fancy, taste, sensibility or judgment of the purchaser, in which case "[he] shall be the sole judge of his satisfaction." *Stribling v. Ailion,* 223 Ga. 662, 663, supra.

these conditions have been met," and provided this was done before the offer was withdrawn. *Markan Development Co. v. Rolyat, Inc.,* 93 Ga. App. 560, supra. As stated in *Brown v. Bowman,* 119 Ga. 153, 156 (46 SE 410): " 'The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part *before the promise is withdrawn.'* " (Emphasis supplied.) Accord, *Timmons v. Bostwick,* 141 Ga. 713, 716 (82 SE 29). "If it is accepted *before it is withdrawn or terminated,* a contract then results." *Prior v. Hilton &c. Lumber Co.,* 141 Ga. 117, 118 (80 SE 559). (Emphasis supplied.)

Not only must the promise be withdrawn before performance by the promisee in order to prevent the formation of a binding contract, but the withdrawal of the promise must be communicated to him before his acceptance or performance. 17 CJS 712, Contracts, § 50(d); 17 AmJur2d 373, Contracts, § 35; Restatement, Contracts, 94, § 41; 1 Williston on Contracts (3d Ed.) 179, § 56; Simpson on Contracts 32, § 25 (2d Ed. 1965). "But as Hogan was under no obligation to take and pay for the cotton, Sivell was at liberty to withdraw what at this stage of the transaction was a mere offer to deliver the cotton upon the terms stated in the writing, *provided the withdrawal was communicated to Hogan* before he did anything which would make him bound to accept the offer and pay for the cotton. . . . By signing the paper Sivell placed himself in a position where he was required either to withdraw his offer before Hogan did something to render himself bound, or to deliver the cotton and complete the offer in the event Hogan became bound to an acceptance." *Sivell v. Hogan,* 119 Ga. 167, 172, 173 (46 SE 67). Thus "if both parties meet, one prepared to accept and the other to retract, whichever speaks first will have the law with him; and this question is one of fact to be decided by the jury." 17 CJS 708, Contracts, § 50(a). Accord, *Prior v. Hilton &c. Lumber Co.,* 141 Ga. 117 (1), supra.

In the instant case there is no question of fact as to who spoke first, since this summary judgment record is

clear that Mitchell's letter of affirmance was received by the general partner before he mailed his letter of withdrawal. Thus our analysis, as we have related the facts up to this point, is as follows: Mitchell's promise to buy the property, conditioned upon his being able to obtain approval to run a spur line at a location satisfactory to himself, was illusory since no standards were set forth to authorize a determination that, if not satisfied, he nevertheless ought to have been. In these circumstances his discretionary promise to buy was no more effective than if he had promised to buy "provided I decide to do so." Thus at that point the partnership's promise to sell, unsupported by any consideration, was unenforceable and stood as a mere unaccepted offer, creating a power of acceptance in Mitchell, but revocable at any time. The ninety-day provision for performance, since not supported by a consideration, did not make the offer to sell irrevocable during that time — notwithstanding its language granting the ninety-day period, its sole effect was to prescribe the time when the offer to sell would expire if not sooner revoked. *Prior v. Hilton &c. Lumber Co.,* 141 Ga. 117 (1), supra; 17 AmJur2d 373, Contracts, §§ 35, 36. Before that period had expired, although Mitchell filed no formal application with the railroad and received no formal approval, nevertheless various proceedings took place with the railroad which led Mitchell and his agents to believe that approval had been given or would certainly follow as a matter of course. The contract did not specify what type of approval was necessary (see *Pickett v. Chamblee Const. Co.,* 124 Ga. App. 769 (2) (186 SE2d 123) (architect's certificate); *MacNeill v. Maddox,* 194 Ga. 802 (22 SE2d 653) ("approve")); and since the contingency was not the actual obtaining of approval but *"being able* to obtain approval,"[3] and since Mitchell and his agents did, in good faith,[4] make a serious and sustained effort to

---

[3]The distinction between "obtaining" and "being able" to obtain is important in determining whether the contingency has in fact occurred. See *Ansley v. Atlanta Suburbia Estates,* 230 Ga. 630 (198 SE2d 319).

[4]We hold as a matter of law that the agents made a good faith effort to obtain the railroad's approval. The

secure approval by preparing plats, conferring with railroad engineers, etc., a jury question was presented as to whether Mitchell was, in fact, "able" to obtain the railroad's approval as his agents had been led to believe. Thereafter Mitchell declared himself satisfied and, as required by the condition and by general law (*Markan Development Co. v. Rolyat, Inc.,* 93 Ga. App. 560, supra; *North Fulton Realty Co. v. Kane,* 105 Ga. App. 274 (124 SE2d 405); *Hartford Fire Ins. Co. v. Steenhuis,* 115 Ga. App. 625 (155 SE2d 690)), notified the partnership that the conditions had been met. Thereafter the partnership notified him that the offer was revoked, which was too late. As matters thus stood Mitchell would have breathed life into his otherwise unenforceable promise to buy, supplying the required mutuality of obligation to the partnership's promise to sell, resulting in a binding bilateral contract; and Mitchell and the real estate agent accordingly would have been entitled to prevail if the jury, to which the case should have been submitted, found that Mitchell was "able" to obtain approval.

However, at page 300 of the record we find the following testimony of Percy Helmer, Mitchell's real estate agent: "I told Mr. Mitchell that I didn't know what was happening in this thing, but I had never had anything, frankly, from a real estate man to happen like this before, that I expected to check into it. I got in touch with Mr. Mathews [a lawyer] and then I went to see Mr. Mitchell, I think that night, and told Mr. Mitchell that I had employed Mr. Mathews to look into this thing and *he* said, 'Well, hell, I know what happened — Well, two weeks before this or two or three weeks before, it came through — I haven't read it — I subscribed to this subscription that shows the transfers and *he sold the property two weeks prior to this.* This was picked up from the courthouse.' " (Emphasis supplied.)

Does the italicized "he" refer to Mathews or Mitchell and, if Mitchell, does this mean that he knew the property had been sold before he sent his letter affirming the

inefficiency stems not from improper motive or lack of diligence but from the young agent's lack of maturity and experience.

contract? If so, then the power of acceptance was terminated and his acceptance letter, which was required to be sent before the offer was withdrawn (*Markan Development Co. v. Rolyat, Inc.,* 93 Ga. App. 560, supra), was ineffective. 17 CJS 712, Contracts, § 50(d); 17 AmJur2d 373, Contracts, § 35; 1 Corbin on Contracts 167, § 40 (1963); Restatement, Contracts 96, § 42; Simpson on Contracts 32, § 25 (2d Ed. 1965). The resolution of this question must await the further proceedings which we have already indicated should follow.

We conclude that, except as next held, no party was entitled to summary judgment. The orders granting summary and final judgment to Helmer will be reversed, as will also the order as to Mitchell's motion insofar as it is construed as granting partial summary judgment to him. The orders denying summary judgment to the partnership and the general partner are affirmed.

2. The limited partners took no part in the partnership business except to indicate their desire to sell or not to sell, and their summary judgment motion should have been granted. *Trans-Am Builders, Inc. v. Woods Mill, Ltd.,* 133 Ga. App. 411 (210 SE2d 866).

*Judgments affirmed in part and reversed in part. Deen, P. J., and Quillian, J., concur.*

ARGUED MAY 24, 1976 — DECIDED SEPTEMBER 28, 1976 — REHEARINGS DENIED OCTOBER 15, 1976 —

*Hansell, Post, Brandon & Dorsey, Charles E. Watkins, Jr., Lawrence S. Burnat,* for appellants.
*Ferrin Y. Mathews,* for appellees.