## A00A1702. LEE v. GREEN LAND COMPANY, INC.
### (538 SE2d 189)

PHIPPS, Judge.

Alleging that Alabama Life Insurance Company ("Alabama Life") breached a real estate contract obligating it to sell certain land, R. Norman Lee filed a complaint seeking specific performance or, in the alternative, damages.[1] Finding the agreement at issue was not a valid and enforceable contract, the trial court awarded summary judgment to Alabama Life's successor in interest, Green Land Company, Inc. Asserting that material issues of disputed fact precluded summary judgment, Lee appeals. Having reviewed the record, we affirm.

Lee executed an agreement titled "OFFER TO PURCHASE," with Alabama Life, the owner of 163 acres of timberland. David Packard, an employee of Alabama Life, signed on the line designated "SELLER." The document provided:

THIS AGREEMENT is made this 15 day of April 1991[,] R. Norman Lee DDS and _____ PURCHASER(S) have this day offered to purchase from Alabama Life Insurance Company that certain property known and described as [legal description] at a purchase price of . . . $79,900.00.

This "offer to purchase" included a special stipulation that "[t]his contract is contingent on seller's ability to obtain building permit(s) on said tract." The closing date was set as "ASAP." The document further provided: "IN THE EVENT the Seller is unable to perform under the terms of this agreement, all deposits paid by Purchaser shall be refunded and this shall constitute complete remedy for such nonperformance." The "offer to purchase" also stated, "[i]t is understood and agreed that should the 'owner' find this offer unacceptable the binder will be returned."

At the time of signing, Lee paid a $5,000 binder which Packard forwarded along with the completed form to Alabama Life. During the next 18 months, Packard and other employees of Alabama Life attempted to obtain the building permit.

A year and a half after executing the document, after learning that Alabama Life was experiencing difficulty in securing the permit, Lee informed Alabama Life that he would waive that requirement. But Alabama Life refused to go forward with the sale. Several months later, by letter of counsel dated March 12, 1993, Lee again

---

[1] After determining that the underlying action did not fall within its equity jurisdiction, the Supreme Court transferred this case to this court. *Lee v. Green Land Co.*, 272 Ga. 107 (527 SE2d 204) (2000).

advised Alabama Life that he was waiving that contingency. After Alabama Life refused to sell the property, Lee filed suit. While Lee's suit was pending, Alabama Life became insolvent. Green Land then purchased the land, subject to Lee's claims, from the Receivership Division of the Alabama Insurance Department.

On summary judgment, Lee and Green Land disputed whether the agreement was merely an offer which was never accepted or a binding and enforceable contract for which specific performance could be obtained. Green Land also contended that Packard had lacked authority to enter a binding agreement on its behalf.[2]

Burton R. Green, the owner of Green Land, which had operated Alabama Life, testified that Packard was employed to solicit offers and had no authority to execute contracts. Green denied that Alabama Life or any authorized agent ever accepted the offer to purchase. According to Green, after Alabama Life explored the possibility of complying with the special stipulation regarding the building permit, it discovered it could not satisfy that condition and refunded Lee's deposit.

Lee, however, testified that Packard "identified himself as an agent for ALIC," when he presented the contract. According to Lee:

> Mr. Packard stated that he was authorized to negotiate and enter into agreements for the sale of certain timber and land tracts owned by ALIC in middle Georgia. Mr. Packard stated that in his work for ALIC he had negotiated other contracts similar to mine with other parties. The contract when presented already had the amount of the purchase price typed thereon, along with a description of the property. Mr. Packard represented that this was [the] standard contract used for the sale of property by ALIC.

1. Lee contends that a jury must determine whether he entered into a binding contract with Alabama Life.

A contract for which specific performance is sought must be definite and precise to eliminate uncertainty and to preclude any reasonable misunderstanding.[3] To be enforceable the contract must specify the parties, sufficiently describe the subject matter and name the consideration.[4] The express terms incorporated into an agreement, in

---

[2] Finding it untimely, the trial court refused to consider an affidavit from Packard that Lee attempted to offer into evidence on the day of the hearing. See *Zampatti v. Tradebank Intl.*, 235 Ga. App. 333, 338 (2) (b) (508 SE2d 750) (1998) (trial court vested with discretion to decide whether to consider untimely filed affidavits).

[3] *Harris v. Trippi*, 209 Ga. 369, 372 (2) (72 SE2d 704) (1952); OCGA § 23-2-130.

[4] *Beller & Gould v. Lisenby*, 246 Ga. 15, 17 (1) (268 SE2d 611) (1980).

tandem with the intent of the contracting parties, are paramount.[5] But when any material provision of a contract is indefinite or uncertain, a court will not decree the specific performance of that contract under OCGA § 23-2-130.[6]

The written agreement at issue here, even when construed against Alabama Life, the drafter, expressly states that it is an "offer to purchase" and varying forms of the word "offer" appear on the face of the document.[7] When a contract is contingent on the meeting of some condition, it is not enforceable by either party until the condition has been met.[8] As a general rule, contracts conditioned upon discretionary contingencies lack mutuality and are unenforceable.[9]

> Where the fancy, taste, sensibility, or judgment of the promisor is involved, there is practical unanimity that if one agrees to accept and pay if he is satisfied with a thing, he can not be compelled to do so on proof that other people are satisfied with it, or that he ought to be.[10]

The contingency here, "should the 'owner' find this offer unacceptable the binder will be returned," vested Alabama Life, the seller, with the sole power to judge its own satisfaction, thereby depriving the contract of mutuality.[11] In essence, Alabama Life created a special contingency under this "offer to purchase," that is, should Alabama Life find the offer made by Lee to be "unacceptable," it could return his binder and reject his offer.[12] This document is simply a purchase offer which Alabama Life refused to accept. Because the writing at issue lacks the elements needed to create a binding and enforceable contract, neither specific performance nor damages are obtainable based on it.[13]

Lee is mistaken in contending that a jury must resolve whether

---

[5] See *Whitley v. Patrick*, 226 Ga. 87, 88-89 (172 SE2d 692) (1970).

[6] *Cashin v. Markwalter*, 208 Ga. 444, 446 (3) (67 SE2d 226) (1951), overruled on other grounds, *Sikes v. Sikes*, 233 Ga. 97, 99 (209 SE2d 641) (1974).

[7] See generally OCGA § 13-3-1; *Grier v. Brogdon*, 234 Ga. App. 79, 80-81 (2) (505 SE2d 512) (1998).

[8] *Moore v. Buiso*, 235 Ga. 730, 731 (1) (221 SE2d 414) (1975).

[9] *Stone Mountain Properties, Ltd. v. Helmer*, 139 Ga. App. 865, 867 (1) (229 SE2d 779) (1976).

[10] (Punctuation omitted.) Id. at 868; see *Teague v. Adair Realty &c. Co.*, 92 Ga. App. 463, 467 (1) (88 SE2d 795) (1955).

[11] *Stone Mountain Properties*, supra, 139 Ga. App. at 868; *Charter Investment &c. v. Urban Med. Svcs.*, 136 Ga. App. 297, 298 (3) (220 SE2d 784) (1975) (when one party has untrammeled discretion, contract generally lacks mutuality).

[12] *Rome Indus. Ins. Co. v. Eidson*, 138 Ga. App. 592, 596 (4) (75 SE 657) (1912) ("Where the company reserved to itself the question of satisfaction, it would be changing the contract to hold that what would satisfy a reasonable man would answer the terms of the [contract].").

[13] *Stribling v. Ailion*, 223 Ga. 662, 664 (2) (157 SE2d 427) (1967).

Packard had apparent authority to bind Alabama Life to the agreement. Under the "equal dignity rule," the authority of an agent to execute an agreement required by the statute of frauds to be in writing must also be in writing.[14] For that reason, the authority of an agent to execute a contract for the sale of land must be evidenced by a writing.[15] Here, no such writing exists.

2. Lee contends that a jury must determine whether Alabama Life ratified Packard's actions by attempting to obtain the building permit. We disagree. The ratification of a real estate contract which was executed by an unauthorized agent must be in writing.[16] With the exception of part performance, such as going into possession of the property or making improvements to it, the ratification must be in writing.[17] Oral ratification will not suffice.[18] Since the agreement was not enforceable, whether Lee removed the special stipulation is irrelevant. Because Alabama Life was not bound to sell its property, Lee cannot obtain specific performance or damages for Green Land's refusal to do so.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 15, 2000 ▬▬▬

*Smith, Galloway, Lyndall & Fuchs, Newton M. Galloway, Dean R. Fuchs, Shepherd & Johnston, William G. Johnston III*, for appellant.

*Alan W. Connell*, for appellee.

---

[14] *Turnipseed v. Jaje*, 267 Ga. 320, 322 (1) (477 SE2d 101) (1996).
[15] *Deal v. Dickson*, 232 Ga. 885, 886 (1) (209 SE2d 214) (1974).
[16] *McCalla v. American Freehold &c. Co.*, 90 Ga. 113, 117 (15 SE 687) (1892).
[17] *Turnipseed*, supra, 267 Ga. at 324 (2) (b); *Deal*, supra, 232 Ga. at 886 (2).
[18] *Hubert Realty Co. v. Bland*, 79 Ga. App. 321, 323 (2) (53 SE2d 691) (1949).